Bob L. Olson (NV Bar No. 3783)
Nathan G. Kanute (NV Bar No. 12413)
SNELL & WILMER, L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NC 89169
Telephone: (702) 784-5200
Email: bolson@swlaw.com
  nkanute@swlaw.com

James D. McCarthy (*pro hac vice pending*)
Jason P. Fulton (*pro hac vice pending*)
DIAMOND MCCARTHY, LLP
2711 N. Haskell Ave., Suite 3100
Dallas, TX 75204
Telephone: (214) 389-5300
Email: jmccarthy@diamondmccarthy.com
  jfulton@diamondmccarthy.com

*Attorneys for Snow Covered Capital, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SNOW COVERED CAPITAL, LLC,<br><br>            Plaintiff,<br><br>vs.<br><br>WILLIAM WEIDNER, ANDREW FONFA,<br>DAVID JACOBY, and LUCKY DRAGON<br>LP,<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT**<br>**(APPLICATION FOR DEFICIENCY**<br>**JUDGMENTS)** |

Plaintiff Snow Covered Capital, LLC (sometimes hereinafter "SCC") files this original Complaint against Defendants William Weidner ("Weidner"), Andrew Fonfa ("Fonfa"), David Jacoby ("Jacoby"), and Lucky Dragon LP ("LD LP") (collectively "Defendants"). and alleges as follows:

## I.   INTRODUCTION

In May 2016, Snow Covered Capital agreed to loan Lucky Dragon LP $45,000,000 for the construction of a new hotel and casino in Las Vegas, Nevada, to be called the Lucky Dragon Hotel and Casino.  To induce Snow Covered Capital to loan the money, the Guarantor Defendants (Weidner, Fonfa, and Jacoby) signed personal guarantees promising to pay the balance owed should LD LP file for bankruptcy and to otherwise compensate Snow Covered Capital for other losses associated with a LD loan default.  Although the Lucky Dragon opened in fall 2016 to great fanfare, by January 2018, LD LP had defaulted on the loan and closed its casino.  Shortly thereafter, in February 2018, it filed for bankruptcy.  In October 2018, the property sold at a foreclosure sale for a credit bid of $35,000,000, leaving the Defendants responsible for the deficiency.

## II. JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the citizenship of the Plaintiff differs from the citizenship of the Defendants and the amount in controversy exceeds $75,000 excluding interest and costs.

2.      This Court also has subject matter jurisdiction under 28 U.S.C. §1334 because: (a) this action arises in or is related to a case arising under Title 11, namely the bankruptcy of Defendant LD LP, which was filed and is currently pending before the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), in Case No. 18-10850-mkn; (b) adjudication of the amount of SCC's claim against LD LP is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O); (c) the Bankruptcy Court terminated the automatic stay to allow SCC to initiate litigation against LD LP for the purpose of liquidating its claim against the LD LP estate; (d) the outcome of this litigation against the Guarantors could reduce the Plaintiff's claim against the LD LP estate; and (d) the outcome of the litigation against LD LP has direct implications for the claims adjudication process in the Bankruptcy Court.

3.      This Court has personal jurisdiction over Defendants because Defendants are residents of Nevada or have had contacts with Plaintiff in Nevada that give rise to the claims in this lawsuit.

4817-3663-9379

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the property that is the subject of the action, the Lucky Dragon Hotel and Casino is situated in this district at 300 West Sahara Avenue, Las Vegas, Nevada, Parcel Number 162-04-816-001, and because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue in this Court is also proper under 28 U.S.C. § 1409 because this action is related to the LD LP bankruptcy filed in this District.

### III. THE PARTIES

5. Plaintiff Snow Covered Capital, LLC is a California limited liability company. The members of SCC are limited liability companies: Nellie LLC, 1421 Capital LLC, and Associate Capital LLC. The owners of these three limited liability companies are individuals residing in California or trusts whose trustees are citizens of Delaware and Alabama.

6. Defendant William Weidner is an individual citizen and resident of Clark County, Nevada who may be served with process at his usual place of abode in Las Vegas, NV, or wherever he may be found.

7. Defendant Andrew Fonfa is an individual citizen and resident of Clark County, Nevada who may be served with process at his usual place of abode in Las Vegas, NV, or wherever he may be found.

8. Defendant David Jacoby is an individual citizen and resident of Texas who may be served with process at his usual place of abode in Galveston, TX, or wherever he may be found.

9. Defendants William Weidner, Andrew Fonfa, and David Jacoby are sometimes collectively referred to herein as the "Guarantor Defendants."

10. Defendant LD LP is a Nevada limited partnership. Its limited partners are citizens of China. Its general partner, Las Vegas Economic Impact Regional Center, LLC ("LVEIRC") is a Nevada limited liability company. The members of LVEIRC are Eastern Investments, LLC, which is wholly owned by Defendant Fonfa, and Bofu LLC, which is owned by various Nevada trusts having Nevada citizens and residents as trustees.

### IV. FACTS

11. On or about May 3, 2016, SCC entered into a series of agreements to provide loans

4817-3663-9379

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  to LD LP for the construction of a new hotel and casino in Las Vegas, Nevada to be called the

2  Lucky Dragon.  These agreements included:

3          a.  A "Construction Loan" – pursuant to this Construction Loan Agreement

4  Snow Covered Capital loaned LD LP $45,000,000, comprised of a construction loan of

5  $30,000,000 and a line of credit for $15,000,000;

6          b.  A "Secured Promissory Note" – a Secured Promissory Note (Construction

7  Loan) given by LD LP and payable to SCC in the amount of $30,000,000;

8          c.  A "Secured Line of Credit" – a Secured Promissory Note (Line of Credit)

9  given by LD LP and payable to SCC in the amount of $15,000,000;

10          d.  "Deed of Trust" – a Construction Deed of Trust, (with assignment of leases

11  and rents, security agreement and fixture filings) executed by LD LP for the benefit of SCC;

12          e.  "Guaranty" - a Recourse Obligations Guaranty between SCC and the

13  Guarantor Defendants.

14          f.  A true and correct copy of the Guaranty is attached as **Exhibit "1"** hereto.

15      12.  Under the terms of the Construction Loan, LD LP agreed to borrow and repay the

16  principal sum of $45,000,000 subject to repayment, interest, and other such terms, conditions, and

17  obligations as stated therein.

18      13.  In association with the Construction Loan, LD LP also executed and delivered to

19  SCC the Secured Promissory Note and Secured Line of Credit.  The Secured Promissory Note and

20  Secured Line of Credit state the payment, maturity, interest, and other terms and conditions relating

21  to LD LP's repayment obligations under the Construction Loan.

22      14.  To secure LD LP's repayment, and other such obligations as stated in the

23  Construction Loan, Secured Promissory Note and Secured Line of Credit, and to induce SCC to

24  lend the monies stated therein to LD LP, LD LP also agreed to and executed the Deed of Trust,

25  which was recorded with the Clark County Recorder's Office on May 11, 2016 as Book/Instrument

26  No. 20160511-0002786.

27      15.  The Deed of Trust granted nonparty Nevada Title Company the powers of a trustee

28  holding title to the Premises (as defined in the Deed of Trust to include the land and improvements

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4817-3663-9379

1  of the Lucky Dragon Hotel and Casino) and to other assets for the benefit of SCC, all in order to

2  secure LD LP's performance under the Secured Promissory Note and the Secured Line of Credit

3  and LD LP's payment of principal, interest, prepayment fees, late charges, loan fees, and all other

4  charges and sums owing thereunder.

5       16.    The Construction Loan, Secured Promissory Note, Secured Line of Credit, Deed of

6  Trust and other documents executed and delivered in connection with the loan from SCC to LD LP

7  are collectively referred to herein as the "Loan Documents."

8       17.    As further inducement for SCC to loan LD LP the funds provided under the

9  Construction Loan, the Guarantor Defendants executed and jointly and severally agreed to the terms

10 of the Guaranty, dated May 3, 2016, in which they guaranteed the payment of certain obligations

11 of LD LP to SCC.

12      18.    The Guarantor Defendants jointly and severally agreed to be liable for the full

13 amount of the Secured Obligations (as defined in the Deed of Trust) if the Lucky Dragon Hotel and

14 Casino became an asset in a bankruptcy proceeding of LD LP.

15      19.    The Guarantor Defendants also agreed to be jointly and severally liable for certain

16 "Guaranteed Obligations" defined in the Guaranty, which included but was not limited to, any

17 "Losses" incurred by SCC arising out of (i) any failure to pay "any valid taxes, assessments, and

18 impositions on the Premises"; and (ii) all legal costs and expenses incurred by SCC in connection

19 with litigation or other legal proceedings such as a bankruptcy of LD LP.

20      20.    SCC fully performed its obligations under the Secured Promissory Note and loaned

21 LD LP $30,000.000.00.

22      21.    SCC fully performed its obligations under the Secured Line of Credit and loaned

23 LD LP $15,000.000.00.

24      22.    Pursuant to the Secured Promissory Note and Secured Line of Credit, all principal

25 and accrued interest under the Secured Promissory Note and Secured Line of Credit were due and

26 payable on the Maturity Date, defined in the Construction Loan as May 3, 2017. However, the

27 parties extended the Maturity Date for both the Secured Promissory Note and Secured Line of

28 Credit pursuant to the terms of the Construction Loan for six months, to the First Extended Maturity

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4817-3663-9379

1    Date of November 3, 2017.

2        23.    In August 2017, LD LP breached the Loan Documents by failing to make a monthly

3    interest payment required by the Loan Documents.  On or about August 14, 2017, SCC notified LD

4    LP and the Guarantor Defendants of LD LP's default under the Construction Loan, and warned that

5    failure to cure would result in foreclosure proceedings under the Deed of Trust.

6        24.    On or about August 18, 2017, SCC, through counsel, sent LD LP and each of the

7    Guarantor Defendants the written statement required by Nevada Revised Statutes 107.080 and

8    107.095 setting forth the default and the steps necessary to cure.

9        25.    On or about September 1, 2017, following LD LP's default and breach of the Loan

10    Documents, SCC executed and recorded that certain Substitution of Trustee with the Clark County

11    Recorder's office as Book/Instrument 20170901-0000514, which by its terms substituted First

12    American Title Insurance Company as trustee under the Deed of Trust in place of Nevada Title

13    Company.

14        26.    On or about September 1, 2017, following LD LP's default and breach of the Loan

15    Documents, First American Title Insurance Company as Trustee, caused a "NOTICE OF

16    DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST" to be recorded in the Clark

17    County Recorder's Office as Book/Instrument No. 20170901-0000515.  First American Title

18    Insurance Company also sent copies of that Notice to LD LP and the Guarantor Defendants.

19        27.    On or about January 9, 2018, following LD LP's failure to cure the default stated in

20    the September 1, 2017 Notice of Default, the Trustee under the Deed of Trust recorded a Notice of

21    Trustee's Sale with the Clark County Recorder's Office as Book/Instrument No. 20180109-

22    0001520 and sent copies to LD LP and the Guarantor Defendants.  The Trustee then published the

23    Notice of Sale as required by the applicable statutes.  SCC noticed the Trustee's sale for February

24    6, 2018, but later postponed it until June 15, 2018.

25        28.    On February 21, 2018, LD LP filed a voluntary chapter 11 bankruptcy petition with

26    the United States Bankruptcy Court for the District of Nevada, Case No. 18-10850-mkn.

27        29.    At the time of the bankruptcy filing, the entire $45,000,000.00 of principal loaned

28    by SCC to LD LP remained outstanding, along with accrued interest, fees, and other charges owed

4817-3663-9379

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

to SCC under the terms of the Loan Documents.

30.    On or about March 1, 2018, SCC determined that Clark County Treasurer's Office records reflected that the Lucky Dragon Hotel and Casino owed $149,731.63 of past due real property taxes and that, on or about March 5, 2018, an additional $143,972.72 of taxes would be added to the past due amount.  The Guarantors were obligated to SCC, under the Guaranty, for any failure to pay all real property taxes on the property, but they did not pay the real property taxes due and owing.

31.    On or about March 2, 2018, SCC, through its counsel, made written demand on the Guarantor Defendants that they honor their obligations under the Guaranty to make payment to SCC of the Secured Obligations, which included all outstanding principal and interest, to pay all real property taxes due on the property, and to reimburse SCC for its legal costs and expenses incurred to date as a result of LD LP's bankruptcy proceedings.

32.    Guarantor Defendants did not make any payments to SCC in response to the March 2, 2018 letter.

33.    On or about September 25, 2018, the Bankruptcy Court entered an order granting SCC's motion for relief from the automatic stay allowing SCC to exercise its rights to sell the property.

34.    On or about September 28, 2018, the Trustee under the Deed of Trust recorded a Notice of Trustee's Sale with the Clark County Recorder's Office as Book/Instrument No. 20180928-0000428 and sent copies to LD LP and the Guarantor Defendants.

35.    On or about October 30, 2018, the Lucky Dragon Hotel and Casino, including the land and improvements was sold at a properly conducted Trustee's sale for $35,000,000.  A Trustee's Deed Upon Sale was recorded with the Clark County Recorder's Office as Book/Instrument No. 20181128-0001429.

36.    On or about February 27, 2019, the Bankruptcy Court entered an order granting SCC's motion for relief from the automatic stay in order to "permit SCC to commence litigation against [LD LP] and any other party obligated to SCC for the amounts that remain due on SCC's loan to [LD LP]".  That same order also provided for Bankruptcy Court involvement in those post-

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  judgment processes potentially impacting the LD LP bankruptcy estate.

2      37.    As of the date of the Trustee's sale, after paying all foreclosure fees and costs

3  incurred in connection with the default and the Trustee's Sale, there remains a deficiency balance

4  due under the Loan Documents to Plaintiff SCC in an amount in excess of $1,000,000, to be proven

5  at the time of this Court's evidentiary hearing held pursuant to NRS 40.457.

6  **V. CAUSES OF ACTION.**

7  **COUNT ONE:**

8  **BREACH OF CONTRACT AND APPLICATION FOR DEFICIENCY JUDGMENT AGAINST LD LP**

9      38.    Plaintiff incorporates all prior paragraphs as if re-stated herein:

10      39.    SCC and LD LP executed a valid and existing Construction Loan Agreement, a

11  Secured Promissory Note, and Secured Lined of Credit, dated on or about May 3, 2016.

12      40.    SCC performed all conditions required of it under the Construction Loan

13  Agreement, Secured Promissory Note, and Secured Lined of Credit, including by loaning

14  $45,000,000 to LD LP.

15      41.    The Construction Loan Agreement, Secured Promissory Note, and Secured Line of

16  Credit obligated LD LP to repay SCC the principal balance owed plus interest and other sums

17  owing under these agreements.

18      42.    The Construction Loan Agreement, Secured Promissory Note, and Secured Line of

19  Credit obligated LD LP to pay SCC its legal costs and expenses (including attorney's fees) incurred

20  in connection with any Event of Default or other action to collect or enforce such agreements,

21  including in any lawsuit or in bankruptcy.

22      43.    SCC has made a demand on LD LP to fulfill its obligations under the Loan

23  Documents.

24      44.    LD LP breached the Loan Documents by failing to fulfill their obligations, including

25  those set forth above, after the occurrence of those events that triggered their obligations to make

26  payments to SCC, and also by failing to make such payments and fulfill such obligations despite

27  written demand by SCC on or about August 14, 2018.

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

45.    As a result of LD LP's breaches of their obligations, SCC has suffered damages in excess of $1,000,000, including but not limited to SCC's deficiency of the amount owed under the Construction Loan Agreement, Secured Promissory Note, and Secured Line of Credit, and other interest, fees, expenses (including attorney's fees) and other charges.

46.    The amount of SCC's damages arising as a result of the deficiency are to be proven at the time of the deficiency judgment evidentiary hearing to be held pursuant to NRS 40.457.

47.    It has been necessary for SCC to hire counsel to prosecute this action as well as to represent it in connection with the event of default and bankruptcy of LD LP and as such, SCC is entitled to an award of the attorney's fees and costs it has incurred, as stated in the Construction Loan Agreement, Secured Promissory Note, and Secured Line of Credit, and as authorized by Nevada law.

**COUNT TWO:**
**BREACH OF CONTRACT AND APPLICATION FOR DEFICIENCY JUDGMENT**
**AGAINST THE GUARANTOR DEFENDANTS**

48.    Plaintiff incorporates all prior paragraphs as if re-stated herein:

49.    The Guarantor Defendants executed a valid and existing Recourse Obligations Guaranty with SCC, dated on or about May 3, 2016, for the purpose of inducing SCC to loan certain funds to LD LP.

50.    SCC performed all conditions required of it under the Guaranty and the Loan Documents.

51.    The Recourse Obligations Guaranty obligated the Guarantor Defendants to pay SCC the full amount of the Secured Obligations, as defined in the Deed of Trust, once the land and improvements constituting the Lucky Dragon Hotel and Casino (defined as the "Premises" in the Deed of Trust), became an asset in the LD LP bankruptcy.

52.    The Recourse Obligations Guaranty obligated the Guarantor Defendants to pay any past due real estate property taxes.

53.    The Recourse Obligations Guaranty obligated the Guarantor Defendants to pay SCC for those legal costs and expenses (including attorney's fees) incurred in connection with the bankruptcy of LD LP, and in connection with any litigation to enforce the Guaranty.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4817-3663-9379

54.    SCC has made demand on Guarantor Defendants to fulfill their obligations under the Guaranty Agreement.

55.    The Guarantor Defendants have breached the Guaranty by failing to fulfill their obligations, including those set forth above, after the occurrence of events that triggered their obligations to make payments to SCC and also by failing to make such payments and fulfill such obligations despite written demand by SCC on or about March 2, 2018.

56.    As a result of Guarantor Defendants' breaches of their obligations under the Guaranty, SCC has suffered damages in excess of $1,000,000, including but not limited to those losses subject to the Guaranty; the losses reflected in SCC's deficiency, and other interest, fees, expenses (including attorney's fees) and charges due and payable under the Guaranty

57.    The amount of SCC's damages arising as a result of the deficiency are to be proven at the time of the deficiency judgment evidentiary hearing to be held pursuant to NRS 40.457.

58.    Plaintiff further seeks specific performance by Guarantor Defendants of their obligations under the Guaranty, including their obligation to hold in trust monies received from LD LP, and to assign to SCC all rights to dividends and payments from LD LP.

59.    It has been necessary for SCC to hire counsel to prosecute this action and as such, SCC is entitled to an award of its attorney's fees and costs incurred as stated in the Guaranty and as authorized by Nevada law.

## VI.  PRAYER

WHEREFORE, Plaintiff respectfully request that Defendants be cited to appear and answer, and that Plaintiff have judgment against Defendants as follows.

a.    For a deficiency judgment against LD LP, in an amount in excess of $1,000,000, and for all other compensatory damages owed to SCC;

b.    For a deficiency judgment against the Guarantor Defendants, jointly and severally, in an amount in excess of $1,000,000, and for all other compensatory damages owed to SCC;

c.    For pre-judgment and post-judgment interest on all damage amounts awarded as required by the Guaranty and Loan Documents, and as otherwise allowable under

4817-3663-9379

1      Nevada law.

2      d.   For attorney's fees and reasonable costs; and for

3      e.   All other relief, at law or in equity, as which Plaintiff may show itself to be entitled.

4

5      Dated:  April 8, 2019.

6                                                    Bob L. Olson (NV Bar No. 3783)
7                                                    Nathan G. Kanute (NV Bar No. 12413)
                                                     SNELL & WILMER, L.L.P.
8                                                    3883 Howard Hughes Parkway, Suite 1100
                                                     Las Vegas, NV 89169
9                                                    Telephone: (702) 784-5200
                                                     Emails: bolson@swlaw.com
10                                                            nkanute@swlaw.com

11                                                   and

12                                                   James D. McCarthy (*pro hac vice pending*)
                                                     Jason P. Fulton (*pro hac vice pending*)
13                                                   DIAMOND MCCARTHY, LLP
                                                     2711 N. Haskell Ave., Suite 3100
14                                                   Dallas, TX 75204
                                                     Phone: (214) 389-5300
15                                                   Emails: jmccarthy@diamondmccarthy.com
                                                             jfulton@diamondmccarthy.com
16
                                                     *Attorneys for Plaintiff Snow Covered Capital LLC*
17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

**INDEX OF EXHIBITS**
**TO**
**COMPLAINT**
**(APPLICATION FOR DEFICIENCY JUDGMENTS)**

| No. | Description |
|-----|-------------|
| 1 | Recourse Obligations Guaranty |

4817-3663-9379

# EXHIBIT 1

## Recourse Obligations Guaranty

# EXHIBIT 1

## RECOURSE OBLIGATIONS GUARANTY

This RECOURSE OBLIGATIONS GUARANTY ("**Guaranty**") is executed to be effective as of May 3, 2016, by **WILLIAM WEIDNER, ANDREW FONFA** and **DAVID JACOBY**, each an individual (whether one or more, individually, a "**Guarantor**" and collectively, "**Guarantors**"), for the benefit of **SNOW COVERED CAPITAL, LLC**, a California limited liability company ("**Lender**").

W I T N E S S E T H :

WHEREAS, pursuant to that certain Secured Promissory Note (Construction Loan) of even date herewith, executed by **LUCKY DRAGON, LP**, a Nevada limited partnership ("**Borrower**"), and payable to the order of Lender in the original principal amount of $30,000,000.00 (together with all renewals, modifications, increases and extensions thereof, the "**Construction Loan Note**"), Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a construction loan ("**Construction Loan**") which Construction Loan is secured by the lien and security interest of that certain Construction Deed of Trust (With Assignment of Leases and Rents, Security Agreement and Fixture Filing), of even date herewith (the "**Deed of Trust**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Construction Loan (and any terms used in this Guaranty with initial capitalized letters and not specifically defined in this Guaranty have the meanings given to them in the Deed of Trust and the Loan Agreement, as defined below);

WHEREAS, pursuant to that certain Secured Promissory Note (Line of Credit) of even date herewith, executed by Borrower and payable to the order of Lender in the original principal amount of $15,000,000.00 (together with all renewals, modifications, increases and extensions thereof, the "**Line of Credit Note**," and together with the Construction Loan Note, collectively, the "**Notes**"), Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a line of credit ("**Line of Credit**," and together with the Construction Loan, collectively, the "**Loans**") which Line of Credit is also secured by the lien and security interest of Deed of Trust and further evidenced, secured or governed by other instruments and documents executed in connection with the Line of Credit;

WHEREAS, Borrower and Lender have also entered into that certain Construction Loan Agreement of even date herewith (the "**Loan Agreement**"), governing certain aspects of the Loans, including, without limitation, requirements regarding title insurance coverage;

WHEREAS, Lender is not willing to make the Loans, or otherwise extend credit, to Borrower unless Guarantors unconditionally guarantee payment and performance to Lender of the Guaranteed Obligations (as herein defined); and

WHEREAS, each Guarantor is the owner or holder of a direct or indirect interest (beneficial, contractual or otherwise) in Borrower and each Guarantor will directly benefit from the Lender's making the Loans to Borrower.

23849181

NOW, THEREFORE, as an inducement to Lender to make the Loans to Borrower, and to extend such additional credit as Lender may from time to time agree to extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

### ARTICLE I

### <u>NATURE AND SCOPE OF GUARANTY</u>

**1.1** <u>**Guaranty of Obligation.**</u>    Each Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations (as herein defined) as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Each Guarantor hereby irrevocably and unconditionally covenants and agrees that each Guarantor is liable for the Guaranteed Obligations as a primary obligor.

**1.2** <u>**Definition of Guaranteed Obligations.**</u> As used herein, the term "**Guaranteed Obligations**" means the obligations or liabilities of Borrower or Guarantors to Lender for any Losses incurred by Lender arising out of or in connection with the following:

(a) fraud, material misrepresentation, or willful misconduct by Borrower or any of its partners, officers, principals, or members, or any Guarantor in connection with the Loans;

(b) physical waste committed on the Premises or damage to the Premises, in each case as a result of the intentional misconduct or gross negligence of Borrower or any of its principals, executive officers, general partners or member; or the removal of any portion of the Premises in violation of the terms of the Loan Documents while an event of default exists;

(c) subject to any right to contest such matters, as provided in the Deed of Trust, failure to pay any valid taxes, assessments and impositions on the Premises (collectively, the "**Taxes**") (except to the extent, but only the extent, the entire amount of the unpaid Taxes has been paid by Borrower pursuant to the Loan Agreement), mechanic's liens, materialmen's liens or other liens on any portion of the Premises which would be superior to the lien or security interest of the Deed of Trust or the other Loan Documents, to the full extent of the amount claimed by any such lien claimant;

(d) all legal costs and expenses (including reasonable attorneys' fees) reasonably incurred by Lender (i) in connection with litigation or other legal proceedings involving the collection or enforcement of this Guaranty, and (ii) arising from or relating to the filing of a petition under any bankruptcy, reorganization, insolvency, readjustment of debt, rearrangement, dissolution, liquidation or other similar debtor relief law or statute by or against Borrower or any Guarantor;

(e) the breach of any representation, warranty, covenant or indemnification provision in that certain Environmental Indemnity Agreement of even date herewith

given by Borrower to Lender or in the Deed of Trust concerning environmental laws, hazardous substances or asbestos;

(f)    the misapplication or conversion by Borrower of (i) any insurance proceeds paid by reason of any loss, damage or destruction to the Premises, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Premises, or (iii) any Rents while an event of default exists; and

(g)    Borrower's failure to maintain any one or more of the insurance policies required under the Loan Agreement (as such requirements may be modified from time to time by Borrower and Lender in accordance with the Loan Agreement) or to pay or provide the amount of any one or more insurance deductible in excess of $25,000.00 following a casualty or other insured event or claim.

The term "**Losses**" means any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, demands, causes of action, damages, actual out-of-pocket losses, fines, penalties, charges, fees, actual out-of-pocket costs and expenses (including without limitation reasonable attorneys' fees and expenses), judgments, awards and amounts paid in settlement of whatever kind or nature (including but not limited to reasonable attorneys' fees and other costs of defense).

Notwithstanding anything to the contrary in the Notes or any of the Loan Documents, (A) Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Secured Obligations secured by the Deed of Trust or to require that all collateral shall continue to secure all of the Secured Obligations owing to Lender in accordance with the Loan Documents, and (B) Guarantors shall be liable jointly and severally for the full amount of the Secured Obligations in the event that: (i) the Premises or any part thereof becomes an asset in a voluntary bankruptcy or voluntary insolvency proceeding under the U.S. Bankruptcy Code, or in an involuntary bankruptcy or involuntary insolvency proceeding brought by any Guarantor or an affiliate of Borrower or Guarantors, or in an involuntary bankruptcy or involuntary insolvency proceeding in which Borrower, any Guarantor or an affiliate of Borrower or any Guarantor has assisted, colluded with or conspired with the Person bringing such action; (ii) Borrower fails to obtain Lender's prior written consent to any voluntary assignment, transfer, or conveyance of fee title to the Premises or any portion thereof or any other voluntary assignment, transfer, or conveyance in violation of the applicable terms and provisions of the Loan Documents; (iii) Borrower fails to obtain Lender's prior written consent to any voluntary assignment, transfer, or conveyance of any ownership interests in Borrower in violation of the applicable terms and provisions of the Loan Documents; or (iv) Borrower fails to comply with the representations and covenants pertaining to its status as a single purpose entity as set forth in the Loan Agreement.

1.3    **Nature of Guaranty.**    This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection.  This Guaranty may not be revoked by any Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Guarantor and after (if Guarantor is a natural person) such Guarantor's death (in which event this Guaranty shall be

binding upon such Guarantor's estate and such Guarantor's legal representatives and heirs). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantors to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Notes and shall not be discharged by the assignment or negotiation of all or part of the Notes.

1.4    **Guaranteed Obligations Not Reduced by Offset.**  The Guaranteed Obligations and the liabilities and obligations of Guarantors to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise and each Guarantor hereby waives and relinquishes, to the fullest extent permitted by applicable law, all rights and remedies to any defense, right of offset or other claim which each such Guarantor may have against Lender.

1.5    **Payment By Guarantors.**  If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantors shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

1.6    **No Duty To Pursue Others.**  It shall not be necessary for Lender (and each Guarantor hereby waives any rights which such Guarantor may have to require Lender), in order to enforce the obligations of Guarantors hereunder, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Loans or the Guaranteed Obligations or any other Person, (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan, (iii) enforce Lender's rights against any other guarantor(s) of the Guaranteed Obligations, (iv) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

1.7    **Waivers.**

(a)    Each Guarantor agrees to the provisions of the Loan Documents, and hereby waives notice of (i) any loans or advances made by Lender to Borrower, (ii) acceptance of this Guaranty, (iii) any amendment or extension of the Notes, the Deed of Trust or of any other Loan Documents, (iv) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery

of any promissory notes or other documents arising under the Loan Documents or in connection with the Premises, (v) the occurrence of any breach by Borrower or an Event of Default, (vi) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (vii) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Obligations, (viii) protest, proof of non-payment or default by Borrower, or (ix) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and the obligations hereby guaranteed.

(b)    **Additional Waivers**.    Each Guarantor hereby fully and completely waives, releases and relinquishes, to the fullest extent permitted (i) by Nevada Revised Statutes ("**NRS**") Section 40.495(2), the rights, benefits and provisions of the one-action rule under NRS Section 40.430, (ii) by NRS Section 104.3605, the right to discharge under NRS Section 104.3605(9), and (iii) by applicable law, the benefits of NRS 40.495(4).

**1.8    Payment of Expenses**.    In the event that Guarantors should breach or fail to timely perform any provisions of this Guaranty, Guarantors shall, immediately upon demand by Lender, pay Lender all costs and expenses (including court costs and reasonable attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder. The covenant contained in this Section shall survive the payment and performance of the Guaranteed Obligations.

**1.9    Effect of Bankruptcy**.    In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, or any agreement, stipulation or settlement, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantors by Lender shall be without effect, and this Guaranty shall remain in full force and effect. It is the intention of Borrower and Guarantors that Guarantor's obligations hereunder shall not be discharged except by Guarantors' performance of such obligations and then only to the extent of such performance.

## ARTICLE II

### EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTOR'S OBLIGATIONS

Each Guarantor hereby consents and agrees to each of the following, and agrees that each such Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which such Guarantor might otherwise have as a result of or in connection with any of the following:

**2.1    Modifications.**    Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Secured Obligations, the Notes, the Deed of Trust, the other Loan Documents, or any other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantors of any such action.

**2.2    Adjustment.**    Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any other guarantor of the Loans (or any portion thereof).

**2.3    Condition of Borrower or Guarantors.**    The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, Guarantors or any other party at any time liable for the payment of all or part of the Guaranteed Obligations; or any sale, lease or transfer of any or all of the assets of Borrower or Guarantors, or any changes in the shareholders, partners or members of Borrower or Guarantors; or any reorganization of Borrower or Guarantors.

**2.4    Invalidity of Guaranteed Obligations.**    The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including without limitation the fact that (i) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by law, (ii) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (iii) the officers or representatives executing the Notes, the Deed of Trust or the other Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (iv) the Guaranteed Obligations violate applicable usury laws, (v) the Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower, (vi) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (vii) the Notes, the Deed of Trust or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other Person be found not liable on the Guaranteed Obligations or any part thereof for any reason.

**2.5    Release of Obligors.**    Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by each Guarantor that each such Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of any other party, and such Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other parties will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to other parties to pay or perform the Guaranteed Obligations.

**2.6    Other Collateral.**  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

**2.7    Release of Collateral.**  Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

**2.8    Care and Diligence.**  The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (i) to take or prosecute any action for the collection of any of the Guaranteed Obligations or (ii) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (iii) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

**2.9    Unenforceability.**  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectibility or value of any of the collateral for the Guaranteed Obligations.

**2.10    Offset.**  The Notes, the Guaranteed Obligations and the liabilities and obligations of the Guarantor to Lender hereunder shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower against Lender, or any other party, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

**2.11    Merger.**  The reorganization, merger or consolidation of Borrower into or with any other corporation or entity.

**2.12    Preference.**  Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

**2.13    Other Actions Taken or Omitted.**  Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantors or increases the likelihood that Guarantors will be required to pay the Guaranteed Obligations pursuant to the terms hereof, it is the unambiguous and unequivocal intention of Guarantors that Guarantors shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or not contemplated,

and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantors represent and warrant to Lender as follows:

3.1     **Benefit.**  Each Guarantor is the owner or holder of a direct or indirect interest (beneficial, contractual or otherwise) in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

3.2     **Familiarity and Reliance.**  Each Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of the Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Notes or Guaranteed Obligations; however, Guarantors are not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

3.3     **No Representation By Lender.**  Neither Lender nor any other party has made any representation, warranty or statement to Guarantors in order to induce the Guarantors to execute this Guaranty.

3.4     **Guarantors' Financial Condition.**  As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, each Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities.

3.5     **Legality.**  The execution, delivery and performance by Guarantors of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any law, statute or regulation whatsoever to which Guarantors are subject or constitute a default (or an event which with notice or lapse of time or both would constitute a default) under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which Guarantor is a party or which may be applicable to Guarantor.  This Guaranty is a legal and binding obligation of Guarantors and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

3.6     **Spousal Interest.**     (i) That either (A) any Guarantor's spouse is not required to join in and acknowledge and consent to this Guaranty in order for Lender to make a claim on all of the interests in all of the assets shown on the financial statements of such Guarantor last delivered to Lender on or prior to the date of this Guaranty or (B) all of such assets are such Guarantor's sole and separate property and none of such assets constitute any portion of such Guarantor's joint, community, marital or mixed property, or (ii) if neither clause (A) or (B) immediately preceding are true, then such Guarantor's spouse has executed this Guaranty for the express purpose of acknowledging and consenting to the same so as to allow the Lender to

realize upon such spouse's joint, community, marital or mixed property interest, if any, in all of such assets to satisfy such Guarantor's obligations pursuant to this Guaranty.

    **3.7   Survival.**   EACH AND ALL OF THE REPRESENTATIONS, COVENANTS, AGREEMENTS, AND INDEMNITIES MADE OR GIVEN BY GUARANTOR IN THIS GUARANTY SHALL SURVIVE THE PAYMENT IN FULL OF THE SECURED OBLIGATIONS, A PROPERTY TRANSFER PERMITTED BY THE DEED OF TRUST, THE TERMINATION OR RELEASE OF THIS GUARANTY BY LENDER, AND THE EXERCISE BY LENDER OF ANY OF ITS RIGHTS OR REMEDIES HEREUNDER OR UNDER ANY OTHER LOAN DOCUMENT, INCLUDING, BUT NOT LIMITED TO, THE ACQUISITION OF THE PREMISES BY FORECLOSURE OR CONVEYANCE IN LIEU OF FORECLOSURE, BUT ONLY TO THE EXTENT OF ACTS OR EVENTS OCCURRING, OR OBLIGATIONS (INCLUDING INDEMNIFICATION OBLIGATIONS) FIRST ARISING (AS OPPOSED TO FIRST DISCOVERED) PRIOR TO SUCH PAYMENT IN FULL, PERMITTED PROPERTY TRANSFER, THE TERMINATION OR RELEASE OF THIS GUARANTY BY LENDER, OR THE ACQUISITION OF THE PREMISES BY FORECLOSURE OR CONVEYANCE IN LIEU OF FORECLOSURE.

### ARTICLE IV

### SUBORDINATION OF CERTAIN INDEBTEDNESS

    **4.1   Subordination of All Guarantor Claims.** As used herein, the term "**Guarantor Claims**" shall mean all debts and liabilities of Borrower to Guarantors, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantors or any of them. The Guarantor Claims shall include without limitation all rights and claims of Guarantors against Borrower (arising as a result of subrogation or otherwise) as a result of any Guarantor's payment of all or a portion of the Guaranteed Obligations. Whenever an Event of Default exists, no Guarantor shall receive or collect, directly or indirectly, from Borrower or any other party any amount upon the Guarantor Claims.

    **4.2   Claims in Bankruptcy.** In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving any Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims. Guarantor hereby assigns such dividends and payments to Lender.

    **4.3   Payments Held in Trust.** In the event that, notwithstanding anything to the contrary in this Guaranty, any Guarantor should receive any funds, payment, claim or distribution which is prohibited by this Guaranty, such Guarantor agrees to hold in trust for

Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that such Guarantor shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Lender, and such Guarantor covenants promptly to pay the same to Lender. Nothing in this Section 4.3 shall apply to any reasonable funds, payments, claims or distributions to David Jacoby under any employment or contractor agreement for base salary payments.

4.4    **Liens Subordinate.** Each Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of such Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, Guarantors shall not (i) exercise or enforce any creditor's right Guarantors may have against Borrower, or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgage, deeds of trust, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantors.

4.5    **Joint and Several.** All obligations under this Guaranty are joint and several and shall be binding upon each Guarantor and a default by any such Guarantor shall be deemed a default by all Guarantors. Notwithstanding any provisions of this Guaranty to the contrary, it is intended that the joint and several nature of the liability of the Guaranteed Obligations and the liens and security interests, if any, granted as security for the Guaranteed Obligations, not constitute a fraudulent conveyance under the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time (a "**Fraudulent Conveyance**"). Consequently, if the liability of any Guarantor for Guaranteed Obligations, or any liens or security interests granted by Guarantor securing Guaranteed Obligations would, but for the application of this sentence, constitute a Fraudulent Conveyance, the liability of any Guarantor and the liens and security interests securing such liability shall be valid and enforceable only to the maximum extent that would not cause such liability or such lien or security interest to constitute a Fraudulent Conveyance. Subject to the foregoing, to the extent that any Guarantor shall, under this Guaranty or the Loan Agreement as a joint and several obligor, repay any of the Guaranteed Obligations constituting Loans or other advances made to another Person under the Credit Agreement (an "**Accommodation Payment**"), then the Guarantor making such Accommodation Payment shall be entitled to contribution and indemnification from, and be reimbursed by, each of the other Guarantors in an amount equal to a fraction of such Accommodation Payment, the numerator of which fraction is such other Guarantor's Allocable Amount and the denominator of which is the sum of the Allocable Amounts of all of the Guarantors. As of any date of determination, the "**Allocable Amount**" of each Guarantor shall be equal to the maximum amount of liability for Accommodation Payments which could be asserted against such Guarantor hereunder and under the Loan Agreement without (a) rendering such Guarantor "insolvent" within the meaning of Section 101 (31) of the Bankruptcy Code of the United States, Section 2 of the Uniform Fraudulent Transfer Act ("**UFTA**") or Section 2 of the Uniform Fraudulent Conveyance Act

("UFCA"), (b) leaving such Guarantor with unreasonably small capital or assets, within the meaning of Section 548 of the Bankruptcy Code of the United States, Section 4 of the UFTA, or Section 5 of the UFCA, or (c) leaving such Guarantor unable to pay its debts as they become due within the meaning of Section 548 of the Bankruptcy Code of the United States or Section 4 of the UFTA, or Section 5 of the UFCA.

## ARTICLE V

## MISCELLANEOUS

    **5.1**   **Waiver.** No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. No modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

    **5.2**   **Notices.** Any notice, demand, statement, request or consent made hereunder shall be in writing, addressed to the address, as set forth below, of the party to whom such notice is to be given, or to such other address as Guarantors or Lender, as the case may be, shall designate in writing, and shall be deemed to be received by the addressee on (i) the day such notice is personally delivered to such addressee, (ii) the third (3rd) day following the day such notice is deposited with the United States postal service first class certified mail, return receipt requested, (iii) the day following the day on which such notice is delivered to a nationally recognized overnight courier delivery service, or (iv) the day facsimile transmission is confirmed after transmission of such notice by telecopy to such telecopier number as Guarantors or Lender, as the case may be, shall have previously designated in writing. The addresses of the parties hereto are as follows:

        Guarantor:  Address as set forth on Signature Pages hereof.

        Lender:

        P.O. Box 472107
        San Francisco, CA 94147
        Attn: Enrique Landa

    **5.3**   **Governing Law.** This Guaranty shall be governed by and construed in accordance with the laws of the State in which the real property encumbered by the Deed of Trust is located and the applicable laws of the United States of America.

    **5.4**   **Invalid Provisions.** If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if

such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

5.5    **Amendments.**  This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

5.6    **Parties Bound; Assignment; Joint and Several.**  This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that Guarantors may not, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder.   If Guarantors consists of more than one Person, the obligations and liabilities of each such Person shall be joint and several.

5.7    **Headings.**  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

5.8    **Recitals.**  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

5.9    **Counterparts.**  To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto. Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

5.10   **Rights and Remedies.**  If any Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantors.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

5.11   **Other Defined Terms.**  Any capitalized term utilized herein shall have the meaning as specified in the Deed of Trust and the Loan Agreement, as applicable, unless such term is otherwise specifically defined herein.

5.12   **Entirety.**  **THIS GUARANTY EMBODIES THE FINAL, ENTIRE AGREEMENT OF GUARANTORS AND LENDER WITH RESPECT TO**

GUARANTORS' GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF.   THIS GUARANTY IS INTENDED BY GUARANTORS AND LENDER AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THE GUARANTY, AND NO COURSE OF DEALING BETWEEN GUARANTORS AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY AGREEMENT.   THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTORS AND LENDER.

    5.13   <u>Waiver of Right To Trial By Jury</u>.  TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW, EACH GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTES, THE DEED OF TRUST, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY, INTENTIONALLY AND VOLUNTARILY BY GUARANTORS, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTORS.

    **5.14**   <u>**Reinstatement in Certain Circumstances.**</u>  If at any time any payment under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of Borrower or otherwise, and if such payment or other amount payable by Borrower reduced the Guaranteed Obligations or other obligations of Guarantors under <u>Section 1.2</u> of this Guaranty, Guarantors' obligation for such portion of the Guaranteed Obligations or other obligations under <u>Section 1.2</u> shall be reinstated as though such payment has been due but not made at such time.

<em>[Signatures appear on following page]</em>

EXECUTED as of the day and year first above written.

GUARANTOR:

_____
WILLIAM WEIDNER

_____
ANDREW FONFA

_____
DAVID JACOBY

Address for Notices:

3575 West Post Road, Suite 1
Las Vegas, NV 89118

23849181

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SNOW COVERED CAPITAL, LLC

## DEFENDANTS
WILLIAM WEIDNER, ANDREW FONFA, DAVE JACOBY, and LUCKY DRAGON LP.

**(b)** County of Residence of First Listed Plaintiff    San Francisco County, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Clark County, NV
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
(See Attachment)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Deficiency lawsuit against guarantors.

## VII. REQUESTED IN COMPLAINT:
- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $    16,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE      DOCKET NUMBER

DATE 04/8/19      SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

Civil Cover Sheet

I.(c). Attorneys (Firm Name, Address, and Telephone number)

**Bob L. Olson (NV Bar No. 3783)**
**Nathan G. Kanute (NV Bar No. 12413)**
**SNELL & WILMER, L.L.P.**
**3883 Howard Hughes Parkway, Suite 100**
**Las Vegas, NC 89169**
**Telephone: (702) 784-5200**
**Email: bolson@swlaw.com**
           **nkanute@swlaw.com**

**James D. McCarthy (*pro hac vice* application compliant with LR IA 11-2 pending)**
**Jason P. Fulton (*pro hac vice* application compliant with LR IA 11-2 pending)**
**DIAMOND MCCARTHY, LLP**
**2711 N. Haskell Ave., Suite 3100**
**Dallas, TX 75204**
**Phone: (214) 389-5300**
**Email: jmccarthy@diamondmccarthy.com**
**jfulton@diamondmccarthy.com**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Nevada

| | |
|---|---|
| SNOW COVERED CAPITAL, LLC, | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| WILLIAM WEIDNER, ANDREW FONFA, | ) |
| DAVID JACOBY, and LUCKY DRAGON, L.P. | ) |
| | ) |
| _Defendant(s)_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   William Peter Weidner
9711 Orient Express Court
Las Vegas, NV 89145

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   James D. McCarthy
Diamond McCarthy LLP
2711 N. Haskell Ave., Suite 3100
Dallas, Texas 75204

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____                    _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| SNOW COVERED CAPITAL, LLC, | ) |
| | ) |
| | ) |
| | ) |
| ———————————————— | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| WILLIAM WEIDNER, ANDREW FONFA, | ) |
| DAVID JACOBY, and LUCKY DRAGON, L.P. | ) |
| | ) |
| ———————————————— | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Lucky Dragon L.P.
c/o Andrew Scott Fonfa in his capacity as the
Designated Responsible Person for Lucky Dragon, L.P.
200 W. Sahara Ave.
Las Vegas, NV 89102

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    James D. McCarthy
Diamond McCarthy LLP
2711 N. Haskell Ave., Suite 3100
Dallas, Texas 75204

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ❏ I returned the summons unexecuted because _____ ; or

    ❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

                                                *Server's signature*

                                                *Printed name and title*

                                                  *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
#### District of Nevada

|  |  |
|---|---|
| SNOW COVERED CAPITAL, LLC, | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| WILLIAM WEIDNER, ANDREW FONFA, | ) |
| DAVID JACOBY, and LUCKY DRAGON, L.P. | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  David Samuel Jacoby
15 Cedar Lawn Dr. N.
Galveston, TX 77551-4633

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    James D. McCarthy
Diamond McCarthy LLP
2711 N. Haskell Ave., Suite 3100
Dallas, Texas 75204

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ❑ I returned the summons unexecuted because _____ ; or

    ❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

                                            _____
                                                  *Server's signature*

                                            _____
                                               *Printed name and title*

                                            _____
                                               *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| SNOW COVERED CAPITAL, LLC, | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| WILLIAM WEIDNER, ANDREW FONFA, | ) |
| DAVID JACOBY, and LUCKY DRAGON, L.P. | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Lucky Dragon L.P.
c/o Shelley D. Krohn as The Chapter 7 Trustee for Lucky Dragon L.P.
Shelley D. Krohn, Ltd.
510 8th Street
Las Vegas, NV 89101

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    James D. McCarthy
Diamond McCarthy LLP
2711 N. Haskell Ave., Suite 3100
Dallas, Texas 75204

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

     ☐ I personally served the summons on the individual at *(place)* _____

         _____ on *(date)* _____ ; or

     ☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

         _____ , a person of suitable age and discretion who resides there,

     on *(date)* _____ , and mailed a copy to the individual's last known address; or

     ☐ I served the summons on *(name of individual)* _____ , who is

     designated by law to accept service of process on behalf of *(name of organization)* _____

         _____ on *(date)* _____ ; or

     ☐ I returned the summons unexecuted because _____ ; or

     ☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____

                                    _____

                                           *Server's signature*

                                    _____

                                       *Printed name and title*

                                    _____

                                        *Server's address*

Additional information regarding attempted service, etc: