NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
**HOLLEY DRIGGS**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308 / Fax: (702) 791-1912
Email: nsantoro@nevadafirm.com
         opancheri@nevadafirm.com

DAVID B. SNYDER, ESQ.
(Admitted *Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 299-2000 / Fax: (215) 299-2150
Email: dsnyder@foxsrothchild.com

*Attorneys for Defendants William Weidner
and David Jacoby*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SNOW COVERED CAPITAL, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>WILLIAM WEIDNER, *et al.*,<br><br>                    Defendants.<br><br>AND ALL RELATED MATTERS. | Case No.  2:19-cv-00595-APG-NJK<br><br>**DEFENDANTS WILLIAM WEIDNER AND DAVID JACOBY'S MOTION IN LIMINE TO PRECLUDE EVIDENCE RELATED TO FRAUDULENT TRANSFERS**<br><br>ORAL ARGUMENT REQUESTED |

Defendants WILLIAM WEIDNER ("*Weidner*") and DAVID JACOBY ("*Jacoby*"),[1] by and through their undersigned counsel of record, hereby respectfully submit their Motion in Limine to Preclude Evidence Related to Fraudulent Transfers ("*Motion*").  This Motion is made

---

[1]  Weidner and Jacoby are collectively referred to herein as "*Defendants*."

and based upon the below Memorandum of Points and Authorities, the Declaration of Oliver J. Pancheri, Esq. attached hereto, [2] and all papers and pleadings on file.

## I.   INTRODUCTION

As the Court is aware, this is an action for a deficiency judgment pursuant to NRS Chapter 40. (Compl., ECF No. 1). As such, the primary question to be determined is whether the fair market value of the Property[3] exceeded any actual indebtedness owed to SCC on the date of the trustee's sale.

Nevertheless, Plaintiff Snow Covered Capital, LLC ("**SCC**") revealed in the Joint Pretrial Order ("**JPTO**") that it may seek to introduce evidence related to alleged fraudulent transfers at trial. Specifically, SCC included the following facts (not stipulated) in the Proposed Pre-trial Order:

> 81.   Following the Trustee's Sale, Guarantor Defendant Fonfa engaged in numerous fraudulent transfers to family members and others intended to transfer and hide assets from SCC and hinder any SCC collection of a judgment against Fonfa. **(Not Stipulated)**
>
> 82.   Those Fonfa transfers violated the terms of the Guaranty and made all of the Guarantors liable for any losses occasioned by those transfers effected in violation of the Guaranty. **(Not Stipulated)**
>
> 83.   At the present time, SCC does not know if Defendants Weidner and Jacoby have engaged in similar efforts to hide assets and frustrate SCC collection activity. **(Not Stipulated)**

(ECF No. 288 at 25, ¶¶ 81-83).

Counsel for the Fonfa Estate may address the allegations made in Paragraphs 81-82. However, the allegations and insinuations in Paragraph 83 against Defendants and Weidner and Jacoby are, by SCC's own admission, made without any factual basis. SCC admits that it is not aware of any efforts made by Defendants Weidner and Jacoby to "hide assets and frustrate SCC

---

[2] In accordance with Local Rule 16-3(a), prior to filing the instant Motion, the parties participated in a good faith meet-and-confer conference, the results of which are set forth in the Declaration of Oliver J. Pancheri, Esq. ("*Pancheri Decl.*"), attached hereto as **Exhibit "A"**.

[3] The property at issue in this matter was the Lucky Dragon Hotel & Casino, which was located at 300 W. Sahara Ave., and is hereafter referred to as the "***Property***."

1  collection activity." SCC should plainly not be permitted to make inquiries at trial when SCC has
2  no good faith basis to make such inquiries **and** there is no claim whatsoever for fraudulent transfers
3  in the Complaint. Indeed, SCC did not even raise any question about fraudulent transfers in this
4  case until very late in the process of preparing the JPTO. No discovery as to Weidner and Jacoby
5  was taken on this issue. SCC should not be permitted to conduct a judgment debtor examination
6  at trial for a contingent liability based on a judgment that Defendants believe will never exist (since
7  the fair market value of the Property at the time of foreclosure exceeded any indebtedness).

8  Importantly, SCC has been separately pursuing its allegations that Defendant Fonfa
9  engaged in fraudulent transfers in two other cases. (ECF No. 288 at ¶ 81). SCC first made
10 allegations of this nature in the Fonfa Probate case in 2020. (*In the Matter of the Estate of Andrew*
11 *Fonfa a/k/a Andre Scott Fonfa, and Andrew S. Fonfa,* Eighth Judicial District Court of Nevada, P-
12 20-103734-E). Later, SCC filed an independent action in Federal Court in this District against the
13 Estate of Fonfa and others in 2022 for alleged fraudulent transfers. (ECF No. 1 in 2:22-cv-01181-
14 CDS-BNW). Yet, SCC never sought leave to amend to bring those claims in this deficiency action
15 despite having years to do so. Instead, SCC inserted the above-quoted paragraphs into the JPTO
16 at the eleventh hour. Weidner are Jacoby are plainly prejudiced by SCC's backdoor attempt to
17 make alleged fraudulent transfers by Fonfa an issue in this case **for the first time** in the JPTO—
18 without ever seeking to amend its Complaint to put Weidner and Jacoby on notice of its claim and
19 depriving them of the opportunity to take discovery, retain experts and otherwise defend
20 themselves against it. This is entirely improper.

21 SCC may contend that highly invasive financial questions regarding admittedly speculative
22 fraudulent transfers are appropriate because such transfers could be a breach of contractual
23 commitments. However, this ignores that the issue would waste this Court's time because its only
24 practical consequence would be to jumpstart SCC's contingent collection efforts regarding a
25 judgment that does not exist yet and should never exist. Fraudulent transfers, even if they occurred
26 (which is denied by Defendants), will not affect the amount of a judgment (which depends solely
27 on the amount of any deficiency). The only effect of fraudulent transfers relates to collectability

of a deficiency judgment, not the amount of the judgment (in other words, fraudulent transfers themselves cause SCC no damage except to the extent that they thwart collection of any deficiency judgment).

Fraudulent conveyances are not at issue in this deficiency case and are accordingly entirely irrelevant and inadmissible pursuant to the Federal Rules of Evidence. Defendants move for an order from this Court precluding SCC from offering evidence or making inquiries at trial related to alleged fraudulent transfers (or whether Defendants had and maintained the ability to satisfy any contingent deficiency liability).

## II. BACKGROUND

Plaintiff Snow Covered Capital ("*SCC*") filed this action on April 8, 2019, as an "Application for Deficiency Judgment." (Compl. at 1, ECF No. 1). Fact discovery in this matter closed May 17, 2021. (ECF No. 179). Expert discovery closed September 29, 2021. *Id*. The dispositive motions deadline was October 29, 2021. The parties respectively filed summary judgment motions. (ECF Nos. 199, 203, 206). The Court entered an Order ruling on the parties' motions on July 15, 2022. (ECF No. 264).

Defendants made good faith efforts to resolve this dispute without intervention of the Court. (Pancheri Decl., Ex. A). Defense counsel participated in a meet-and-confer pursuant to Local Rule 16-3(a) and explained that evidence related to fraudulent transfers is not relevant to this deficiency action, and therefore, inadmissible. *Id*. Despite such efforts, which are more fully detailed in the undersigned's Declaration, the parties have not been able to come to an agreement regarding this issue. This Motion is therefore necessary.

## III. LEGAL STANDARD

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions in limine are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions in limine may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling in limine that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

Pursuant to Federal Rule of Evidence 402, only relevant evidence is admissible at trial. Evidence is relevant if "it has any tendency to make a fact more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005). "A rule of thumb is to inquire whether a reasonable man might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence." *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976) (quotation marks and citation omitted). Courts in the Ninth Circuit routinely grant motions in limine seeking to exclude evidence that is irrelevant to the claims and defenses at issue. *See, e.g.*, *M2 Software*, 421 F.3d at 1087–88.

**IV.   ARGUMENT**

SCC should be precluded from introducing any evidence at trial relating to fraudulent transfers of property or the Defendants' financial abilities. This action is an "Application for Deficiency Judgment," and none of the parties have asserted claims for fraudulent transfers.

1   Evidence related to alleged fraudulent transfers of property is not relevant and therefore
2   inadmissible under the Federal Rules of Evidence.

### A. Deficiency Judgment Applications Under NRS 40.451 *et seq.*

Nevada Revised Statute 40.455 permits an award of a deficiency judgment if there is a deficiency from the proceeds of the foreclosure sale and a balance remaining due to the beneficiary of a deed of trust.  However, NRS 40.459 expressly limits the amount of a deficiency judgment to the lesser of:

> (a) The amount by which the indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale; or
>
> (b) The amount which is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, with interest from the date of sale[.]

NRS 40.459(2).  As such, the primary question to be determined is whether the fair market value of the Property exceeded any actual indebtedness owed to SCC on the date of the trustee's sale. *See Wells Fargo Bank, N.A. v. Kaveh*, No. 2:13-cv-01472-GMN-NJK, 2016 WL 1411350, at *3 (D. Nev. Apr. 8, 2016) ("Pursuant to NRS 40.459, the 'amount of indebtedness' as of the date of the foreclosure sale must be established to determine the amount of a deficiency judgment.").

### B. There Are No Fraudulent Transfers at Issue in this Case

While SCC's Complaint is a deficiency judgment application and does not set forth any fraudulent transfer claims, SCC now seeks to present evidence at trial regarding fraudulent transfers.  The Nevada Uniform Fraudulent Transfer Act ("*UFTA*") was "designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Fin., LLC*, 123 Nev. 228, 162 P.3d 870, 872 (2007).  The act makes it a fraud for a debtor to transfer or incur obligations on property with the intention of avoiding paying a debt to a creditor.  NRS 112.180-190.  To prove that a debtor's transfer is fraudulent, it must generally be shown that the debtor made an actual fraudulent transfer, a constructive fraudulent transfer, or a transfer without receiving reasonably equivalent value.  NRS 112.180(1)(a)–(b); NRS 112.190.  To establish a fraudulent transfer, a plaintiff must demonstrate that (1) the debtor

- 6 -

did not receive reasonably equivalent value in exchange for the transfer and (2) the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due." NRS 112.180(1)(b); *Herup*, 123 Nev. at 233, 162 P.3d at 873. A transfer by an insolvent debtor is fraudulent only if (1) a creditor's claim arose before the transfer was made, (2) the debtor did not receive reasonably equivalent value for the transfer, and (3) the debtor was insolvent or became insolvent because of the transfer. NRS 112.190(1); *Herup*, 123 Nev. at 233, 162 P.3d at 873. A debtor is considered insolvent if "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation" or the "debtor is generally not paying his or her debts as they become due." NRS 112.160.

Here, SCC's Complaint is devoid of factual matter supporting a claim for fraudulent transfer. (*See* Compl. ¶¶ 1–59, ECF No. 1). The Complaint does not allege Defendants engaged in transfers of property to avoid paying debts to creditors. *See id.* Nor does the Complaint allege Defendants are insolvent or became insolvent due to a property transfer. *See id*. Moreover, none of the language employed by NRS 112.140 to 112.250, inclusive, indicates UFTA claims are in any way relevant to determinations under Nevada's deficiency judgment statutes. This action is about whether ***any*** deficiency exists and whether Defendants have ***any*** liability to SCC. SCC must prove a basis for a deficiency judgment before it can skip to judgment collection proceedings. The Court should not permit SCC to, at trial, raise issues relating to alleged fraudulent transfers when there are no such claims pending in this action and no discovery was conducted on these unasserted claims while discovery was open in this matter.

**C. Evidence Regarding Fraudulent Transfers Would Contradict SCC's Admission in the Pretrial Order, Would Amount to a Judgment Debtor Examination Prior to the Entry of any Judgment, And is Accordingly Irrelevant and Inadmissible**

Only relevant evidence is admissible. See Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, the Complaint does not allege or even reference a fraudulent transfer of property. Indeed, even after the close of

the extensive discovery taken in this action, SCC *admits* in the JPTO that it has no evidence that Defendants Weidner and Jacoby engaged in any fraudulent transfers. A party may not offer evidence or advance theories at trial which are not included in the order or which contradict its terms. *Bobo v. Clark Cnty. Collection Serv., LLC,* No. 2:16-CV-02911-APG-CWH, 2018 WL 4778035, at *1 (D. Nev. Oct. 3, 2018). Here, SCC plans to engage in out-of-time discovery at trial at best in an attempt to contradict its admission that it "does not know" if Weidner and Jacoby engaged in any wrongful conduct (but in reality solely in an effort to commence highly invasive financial post-judgment collection discovery). Nor should SCC be permitted to insinuate at trial that Weidner and Jacoby have engaged in any financial misconduct without any factual basis to do so, as it has plainly admitted in Par. 83 of the JPTO.

In effect, SCC wishes to turn the trial testimony of Weidner and Jacoby into a discovery deposition for some possible future claim of fraudulent transfers, or, worse, a judgment debtor examination conducted during the trial and prior to any judgment. In either event, it is inappropriate. Trial is not the time or place for fishing expeditions when a party has no evidence to support an (unpled) allegation. Nor is it appropriate to conduct judgment debtor examinations during trial and prior to the entry of any judgment in plaintiff's favor. Nevada law permits a "judgment creditor" to conduct an examination of a "judgment debtor" under NRS 21.270. SCC is not a "judgment creditor" and the Defendants are not "judgment debtors." Further, the judgment debtor process only occurs "after judgment is entered". *See* NRS 21.272(1)(a). Accordingly, SCC should not be permitted to convert this proceeding to determine whether a liability exists into a premature judgment debtor examination for a judgment that may never exist.

The primary question to be determined in this proceeding is whether the fair market value of the Property exceeded any actual indebtedness owed to SCC on the date of the trustee's sale. Evidence relating to fraudulent transfers would not aid in determining the Property's fair market value or indebtedness amount, if any, on the date of the sale. Thus, evidence relating to fraudulent transfers is entirely irrelevant here as it would not tend to make a fact of consequence more or less probable than it would be without the evidence. Because "[i]rrelevant evidence is not admissible,"

the Court should grant this Motion and exclude and preclude SCC from introducing evidence of fraudulent transfers at trial. *See United States v. Fuechtener,* No. 2:16-cr-00100-GMN-PAL, 2016 WL 11487382, at *2 (D. Nev. Aug. 27, 2016) (quoting Fed. R. Evid. 402). And if SCC felt fraudulent transfers should be part of the trial in this case, it should have sought leave to amend long ago. But it failed to do so, thereby depriving Weidner and Jacoby of the opportunity to defend against such allegations.[4]

**D. SCC's Attempts to Justify its Belated Inclusion of Fraudulent Transfer Evidence into this Trial are Unavailing Because it is Premature, Will Have No Effect on the Outcome of this Case, is Unnecessary since the Same Issue is Presently Being Litigated in other Cases, and is Prejudicial to Weidner and Jacoby**

SCC responded to Defendants' inquiries about the belated and inappropriate references to fraudulent transfers in the JPTO in the email included with this Motion as **Exhibit "B"**. In that e-mail, SCC stated the following:

> I have attached a copy of the Guaranty. You should look to Article III (Reps and Warranties), especially to Sections 3.4 ("Guarantors' Financial Condition") and 3.6 ("Spousal Interest"). We believe Fonfa violated both of these provisions and that all of the Guarantors are liable for those violations under Section 4.5 ("Joint and Several"). See also Sections 1.1 and 5.6. We do not yet know whether the other Guarantors have violated Sections 3.4 or 3.6. If you disagree with the foregoing, please advise as of the nature of those disagreements.

Ex. B.

Defendants disagreed with SCC's assertions and still disagree with them. SCC's argument fails for several reasons:

**First**, any alleged fraudulent conveyances are irrelevant unless and until SCC first proves its deficiency claim. SCC seeks to put the proverbial cart before the horse by consuming trial time

---

[4] Weidner and Jacoby are not parties to either the Fonfa Probate Case (other than filing a Creditor's Claim) or the Federal Court fraudulent conveyance action brought by SCC against the Estate of Fonfa and have therefore not participated in the discovery in those actions.

- 9 -

1   attempting to discover the assets of Defendants for collection purposes before it has even
2   established a right to collect anything.  SCC will have ample opportunity to conduct judgment
3   debtor discovery in the event the Court determines after hearing the evidence at trial that SCC is
4   entitled to a recovery, which Defendants vigorously dispute.  But it is premature and inappropriate
5   to conduct this type of discovery at trial before SCC proves it is entitled to any recovery
6   whatsoever.  And it is especially inappropriate to bring this issue into this case for the first time
7   years after discovery closed and after failing to conduct any discovery thereon during the discovery
8   period.  The prejudice to Weidner and Jacoby is manifest, in that they did not prepare this case
9   based upon unpled and unstated fraudulent transfer claims (or insinuations of financial
10  misconduct) and have now foregone the right to retain experts to defend such allegations.

11  **Second**, SCC will argue that it is attempting to elicit evidence to determine whether any
12  financial representations in the Guaranty were breached.  Putting aside the fact that SCC admits it
13  has no evidence of any such breach by Weidner and Jacoby, even if it had some evidence, it would
14  not make any difference in this case.  The issue in this case is whether there is a deficiency between
15  the fair market value of the Property and the indebtedness on the date of the foreclosure sale.  Any
16  potential breaches of any representations (which are denied by Weidner and Jacoby) would have
17  no bearing whatsoever on the fair market value or the indebtedness, or the amount of any judgment
18  in this case.  If there is no deficiency, it does not matter if any representations were breached
19  (which, again, is denied).  SCC is at least two steps away from establishing any possible relevance
20  to these representations:  it needs to prove a deficiency and then it needs to prove that it could not
21  collect due to some breach of representation.  SCC's "breach of representations" argument is a red
22  herring which bears nothing upon the facts in issue in this case.  The amount of any potential
23  judgment would not be affected at all by whether there was a breach of any financial
24  representation.

25  **Third**, SCC has indicated that it may argue that the breach of a representation by one
26  Guarantor constitutes a breach by the co-Guarantors.  *See* Ex. B.  Here again, whether this is true
27  or not does not matter.  Each of the co-Guarantors is jointly and severally liable for any liability

SCC could possibly establish. *See* Recourse Obligations Guaranty included with this Motion as **Exhibit "C"** at § 4.5. Because the co-Guarantors would be jointly and severally liable in any event for any deficiency, a breach of any representation would not make any of the Guarantors more or less liable than they already would be. Thus, such evidence has no bearing on the outcome of this matter.

**Finally**, SCC is separately pursuing the Fonfa Estate for alleged fraudulent transfers in two other fora: the Fonfa Probate Action (*In the Matter of the Estate of Andrew Fonfa a/k/a Andre Scott Fonfa, and Andrew S. Fonfa,* Eighth Judicial District Court of Nevada, P-20-103734-E) and the action in Federal Court in this District. (*Snow Covered Capital, LLC, v. Jodi Fonfa, et al.,* No. 2:22-cv-01181-CDS-BNW).[5] At this late hour (years after discovery closed), SCC now wishes to drag these same allegations into yet a third forum, in the hope that it can tarnish Weidner and Jacoby with any evidence it may have against Fonfa. It is completely unnecessary for SCC to litigate its fraudulent conveyance claims against Fonfa in this action, when there are two other pending actions where it has raised these claims. And it is prejudicial to Weidner and Jacoby to do so, when they are not parties to these other actions and have not participated in any of the discovery.

### E. Even if Evidence of Fraudulent Transfers Were Relevant, Said Evidence is Inadmissible Under Rule 403's Balancing Test

Relevant evidence may still be inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence may be excluded on account of wasting time because it has scant probative value. *Stathos v. Bowden*, 728 F.2d 15, 19 (1st Cir. 1984). "Particular deference is appropriate" to trial court determinations of the Rule 403 balance; "[i]ndeed, a trial judge's decision to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is 'arbitrary and irrational.'" *Bhaya*

---

[5] This Court can take judicial notice of the pendency of these matters. *See* Federal Rule of Evidence 201.

1  *v. Westinghouse Electric Corp.*, 922 F2d 184, 187 (3rd Cir. 1990).

Here, even if SCC were able to somehow demonstrate that evidence of fraudulent transfers is somehow relevant, such evidence is inadmissible pursuant to Rule 403, as its probative value is substantially outweighed by a danger of undue delay and wasting time. As discussed above, none of the parties have alleged claims or counterclaims for fraudulent transfer. Evidence tending to show a fraudulent conveyance of property therefore has no bearing on the indebtedness amount or the deficiency calculation, and will not change the outcome of this case. Accordingly, any such evidence is of little probative value. Allowing SCC to admit demonstrative, documentary, and/or testimonial evidence regarding fraudulent transfers would only serve to waste the Court and the parties' time and resources and delay justice. Worse, SCC is improperly attempting to tarnish Weidner and Jacoby with any evidence it may have obtained in other litigation (in which Weidner and Jacoby are not parties) regarding alleged fraudulent transfers by Defendant Fonfa. Accordingly, based on Rule 403's balancing test, this Court should preclude SCC from offering any testimony during trial of this action related to fraudulent transfers.

## V.      CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant this Motion in Limine and preclude SCC from offering or eliciting any evidence during trial related to fraudulent transfers or whether Defendants had and maintained the ability to satisfy any contingent deficiency liability. This is a trial to determine a deficiency (a deficiency that Defendants believe does not exist) – not a judgment debtor examination. SCC is presently litigating the question of whether Defendant Fonfa engaged in any fraudulent transfers both in a separate action in federal court in this District and in the Fonfa Probate action. There is no need to belatedly inject this brand new—and unpled--issue into this action, and particularly with respect to Weidner and Jacoby, in light of SCC's admission it does not have any evidence of wrongdoing on their part. Doing so will only waste time and will not make any fact of consequence in this deficiency action more or less probable. Worse, Weidner and Jacoby are significantly prejudiced by SCC's surprise, eleventh-hour attempt to interject brand new alleged fraudulent transfer issues into this case. The

Court should not countenance SCC's inappropriate attempt to tarnish Weidner and Jacoby with any evidence it may have obtained in other cases (where Weidner and Jacoby are not parties and have not participated in discovery) regarding any alleged fraudulent transfers by Defendant Fonfa.

DATED this 13th day of October 2023.

**HOLLEY DRIGGS**

*/s/ Oliver J. Pancheri*
NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308 / Fax: (702) 791-1912
Email: nsantoro@nevadafirm.com
opancheri@nevadafirm.com

*Attorneys for Defendants William Weidner and David Jacoby*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 13th day of October 2023, I electronically filed **DEFENDANTS WILLIAM WEIDNER AND DAVID JACOBY'S MOTION IN LIMINE TO PRECLUDE EVIDENCE RELATED TO FRAUDULENT TRANSFERS** with the Clerk of the Court using the CM/ECF system which sent notification to the counsel of record in this matter.

*/s/ Marissa Vallette*
An employee of HOLLEY DRIGGS