NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
**HOLLEY DRIGGS**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308 / Fax: (702) 791-1912
Email: nsantoro@nevadafirm.com
         opancheri@nevadafirm.com

DAVID B. SNYDER, ESQ.
(Admitted *Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 299-2000 / Fax: (215) 299-2150
Email: dsnyder@foxsrothchild.com

*Attorneys for Defendant William Weidner*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SNOW COVERED CAPITAL, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>WILLIAM WEIDNER, *et al.*,<br><br>                    Defendants. | Case No.:  2:19-cv-00595-APGNJK<br><br>**DEFENDANT WILLIAM WEIDNER'S MOTION TO ENFORCE AGREEMENT AND FOR SANCTIONS** |
| AND ALL RELATED MATTERS. | |

Defendant WILLIAM WEIDNER ("***Weidner***"), by and through his undersigned counsel of record, hereby submits this Motion to Enforce Agreement and for Sanctions:

**I.     INTRODUCTION[1]**

Once again, Plaintiff Snow Covered Capital, LLC ("***SCC***") has forced Weidner to seek the Court's intervention due to SCC's incorrect statements and general bad faith.  Specifically, SCC's

---

[1] The Declaration and Certification of David B. Snyder, Esq., Nicholas J. Santoro, Esq., and Oliver J. Pancheri, Esq. are attached hereto as **Exhibit** "**A**" "**B**" **and** "**C**,**" respectively.

most recent filing (ECF No. 393) includes a fictional set of facts to avoid complying with its own agreement. SCC's own statements and actions expressly prove the fallaciousness of those facts. Weidner has no choice but to correct the record.

### *The Court's Instruction*

On December 6, 2023, this Court ordered the parties to file a stipulation by December 20, 2023, regarding the "witnesses and exhibits that can be deleted from the joint trial lists based upon their agreement that post-foreclosure marketing efforts are not relevant." (ECF No. 361). SCC agrees that there was an agreement. However, it has contorted the Court's order contrary to the terms of that agreement to somehow claim that it does not include preclusion of evidence relating to the sale of the Property to Don Ahern.

### *The Agreement Always Centered around the Sale to Mr. Ahern*

The transcripts and the actions of SCC demonstrate unequivocally that exclusion of the evidence relating to the Ahern sale including the sale price was an integral part of that agreement. Notably, SCC in its most recent filing does not reference one line of any transcript. That is because the parties had agreed both at the December 6, 2023 conference and the prior meet and confer that evidence relating the sale to Don Ahern would be excluded from evidence.[2] *See* Snyder Decl., **Ex. A**, at ¶¶ 4-5.

Perhaps the most telling evidence of SCC's bad faith in its most recent filing is one of its own emails. Pursuant to the Court's order, on December 12, 2023, the parties exchanged lists of documents and other evidence that would be precluded pursuant to their agreement. *Id.* at ¶ 8. SCC's email stated, "The following is a listing of materials that appear to relate to post-foreclosure marketing (efforts, failed efforts) as well as **the Ahern sale**." *Id.* at ¶ 9 [emphasis added]. It further characterized the exhibits that would be precluded as "**Documents on SCC Exhibit list in JPTO re post-foreclosure marketing (efforts, failed efforts) as well as the Ahern sale**" and

---

[2] Nor does SCC's filing contain any declarations to support the purported factual assertions therein. The omission of any declarations or citations to court transcripts is glaring and speaks volumes about the lack of veracity in SCC's new position.

"**Defendants' Exhibits from JPTO re post-foreclosure marketing (efforts, failed efforts) as well as *the Ahern sale***" [bold and underline in original, italics added]. *Id*. at ¶ 10; **Ex. D**.[3]

It is, therefore, remarkable that SCC would now represent to the Court that it did not agree to preclude evidence of the Ahern sale including the sale price. It is further remarkable that SCC would claim that Weidner would agree to allow the Ahern sale price but preclude the mountain of evidence showing that the sale was not indicative of the fair market value of the property.

As set forth below, SCC must be required to honor the agreement.

### *SCC should Reimburse Weidner for the Attorney's Fees on the Issue*

SCC's conduct warrants sanctions. As set forth in Weidner's previously-filed Status Update Regarding Court Ordered Stipulation (ECF No. 378), Weidner expended an enormous amount of time and effort working towards filing the stipulation and extended SCC various courtesies and accommodations when SCC was unable to focus on this stipulation. Unfortunately, SCC continued to be incredibly unresponsive, has acted in bad faith, and generally frustrated the process. Ultimately, SCC reneged on its agreement thereby making all of Weidner's time and efforts useless.

Counsel for Weidner regrets having to make these statements and further involve the Court in this issue. However, it would be unfair to require Weidner to incur the fees due to SCC's bad faith. Accordingly, as set forth below, Weidner respectfully requests the Court enter sanctions against SCC for its actions.

For the reasons set forth below, counsel for Weidner respectfully request that this Court enter an order (i) enforcing the agreement between the parties to preclude post-foreclosure marketing evidence, including evidence relating to the Ahern sale and (ii) entering sanctions against SCC in the form of attorney's fees incurred relating to this issue.

///

///

---

[3] *See* December 12, 2023 email attached hereto as **Exhibit "D."**

## II. ARGUMENT

### A. The Parties Agreed To Preclude Post-Foreclosure Marketing and Sale Evidence Including The Ahern Sale And SCC Breached That Agreement

The 9th Circuit has explained, "[s]tipulations serve both judicial economy and the convenience of the parties, [and] courts will enforce them absent indications of involuntary or uninformed consent." *United States v. Molina*, 596 F.3d 1166, 1169 (9th Cir. 2010) (quotation and citations omitted). *See also Indie Caps LLC v. Ackerman*, CV-20-01970-PHX-DJH, 2023 WL 5206136, at *9 (D. Ariz. Aug. 14, 2023) ("Stipulations freely entered into in civil actions are binding and enforceable."). This includes stipulations regarding the admission of evidence. *Molina*, 596 F.3d at 1169, *Indie Caps LLC*, at *9. Further, "[a] stipulation should be interpreted as to carry out the parties' intentions." *Indie Caps LLC,* at *9 (internal citations omitted).

Courts have also made clear that parties should not be allowed to "renege on . . . stipulation[s] voluntarily made in open court. To do so would be unfairly prejudicial to [the other party] and impede judicial economy." *Indie Caps LLC*, at *9 (*citing Molina*, 596 F.3d at 1169).

Here, there can be no doubt that there was an agreement. SCC admits that in its filing and that the agreement was voluntary. **Ex. A** at ¶ 3. In fact, it was SCC's idea. *Id*.

However, SCC has recently reneged on perhaps the main term of the original agreement – that evidence relating to the Ahern sale would be precluded from admission at trial. *Id.* at ¶ 5.

### *The November 17th Conference*

Counsel for SCC raised this prospect of eliminating the scope of potential evidence for the first time at the November 17, 2023, conference when he stated that "**post-foreclosure sales efforts** . . . doesn't seem to have a real bearing on what the price was on the foreclosure date. At least that's what we believe . . . ." (ECF No. 346, Nov. 17, 2023 transcript at 14-16) [emphasis added]. The ultimate sale to Ahern - including the sale price -would obviously be part of the "post-foreclosure sales efforts."

Counsel further reiterated SCC's position during that conference and said, "[t]he valuation is clearly what is it worth on that particular date. What happens after that particular date does not

- 4 -

change the market before that date." *Id.* at 25.  In comparing pre and post-foreclosure events, SCC's counsel stated, ". . . it's not a symmetrical situation because the events afterwards don't influence the price on a prior date, but the events before do influence the prior date." *Id.* at 27. The ultimate sale to Ahern - including the sale price - obviously "happened after" the foreclosure and are "events after[]" that date.

### *The Confirming E-mails*

The following day, counsel for Weidner sent an email following up on SCC's statements. It stated, "I wanted to follow up on one issue you raised at yesterday's conference. It is our understanding that you are proposing that we stipulate that neither side will reference any marketing efforts, attempts to sell the property after the foreclosure sale. **This would include referencing the sale to 300 West Sahara LLC including the negotiations or the sale price**." [emphasis added]. **Ex. A** at ¶ 4; **Ex. E**.[4]

On November 30, 2023, counsel for Weidner sent an email to counsel for SCC stating, "we continue to agree with your statement that post-foreclosure marketing efforts **and sale** are irrelevant to the issue of value of the Property on the date of the foreclosure sale. Our position had not varied at all since we specifically discussed this with you during our meet and confer the night before the hearing (Nov. 20). We made this clear on the record at the last hearing (page 39 of the transcript)." **Ex. F**.[5]

Similarly, on December 1, 2023, counsel for Weidner sent an email to counsel for SCC stating, "[f]or purposes of the hearing on Dec. 6, we should enter a very simple stipulation that the Parties agree that post-foreclosure marketing efforts **and sale** are irrelevant to the issue of value of the Property on the date of the foreclosure sale. This is what was discussed in Court and certainly what the Parties agree to at this point." **Ex. G** [emphasis added].[6]

---

[4] *See* November 18, 2023 email from Weidner's counsel, attached hereto as **Exhibit "E."**

[5] *See* November 30, 2023 email from Weidner's counsel, attached hereto as **Exhibit "F."**

[6] *See* December 1, 2023 email from Weidner's counsel, attached hereto as **Exhibit "G."**

*The Meet and Confer Conference on December 4th*

Counsel for the parties subsequently held a meet and confer regarding a variety of issues on December 4, 2023. **Ex. A** at ¶ 5. One of the issues discussed was the parties' agreement to preclude post-foreclosure marketing and sale evidence. *Id*. The only aspect of the agreement that was in dispute was the extent to which the written stipulation memorializing this agreement should include the specific exhibits and witness testimony that would be precluded. *Id*. It was clear, however, that the parties were in agreement to preclude post-foreclosure marketing and sale evidence including the Ahern sale price. *Id*. SCC does not reference that conference in its recent filing.

*The December 6th Court Conference*

The agreement to preclude post-foreclosure marketing and sale evidence was next addressed at the Court conference held on December 6, 2023. Counsel for Weidner unequivocally stated that he agreed to SCC's offer to preclude post-foreclosure marketing and sale evidence. (ECF No. 373, December 6, 2023 transcript at 36). Mr. Santoro stated:

> I actually -- two other things, Judge. One is on the issue of post-foreclosure marketing and sale efforts, **including the sale to Ahern**, I want to advise the Court where we are there because this is important for scheduling.
>
> So if you recall back at the hearing -- I think it was November 17th -- Mr. McCarthy made the statement that in his view, that evidence was not relevant to the issue of valuation on the foreclosure sale date.
>
> We agree.

*Id.* [emphasis added].

Mr. Santoro also referenced the December 4, 2023, meet and confer where counsel for the parties agreed to preclude post-foreclosure marketing and sale evidence including the sale to Ahern. *Id*. at 42. As he stated, the only remaining issue was the extent to which the stipulation should specify the documents that would be precluded. *Id*. at 37. Specifically, Mr. Santoro stated:

>Our view, Judge, was to just submit a very simple, really, a one-sentence stipulation, saying just that; that post- -- that evidence of post-foreclosure marketing and sale efforts, **including the sale to Ahern**, are not relevant on the issue of valuation of the property on the date of the foreclosure sale. **That's the concept to which we all agree.**

*Id.* at 37 [emphasis added].

The agreement was further confirmed by SCC during the conference. Although they claimed the evidence was relevant, Mr. McCarthy and Mr. Jorres nevertheless both confirmed they agreed to preclude "the post-foreclosure stuff and the Ahern sale." For example, Mr. McCarthy stated:

>Your Honor, the sticking point is different than described by Mr. Santoro. We -- we do not take the position that the post-foreclosure stuff and **the Ahern sale** is irrelevant. It is relevant.
>
>What we want to do, and may still be able to do, is to say **that if we take that out, if we agree to take that out**, what's the benefit in terms of what exhibits, witnesses, et cetera, are going to disappear?
>
>And that's why we want a very concrete stipulation that says, Here's what's not there, so we don't get to the middle of trial, have somebody coming in that -- on a subject that should be included within a raw stipulation. We want it to be specific. And that would help us shape our exhibit list; it will help shape our witness list; et cetera. So that's what we want.
>
>The benefit to us of doing -- taking away the – **the Ahern sale** is -- is simply the reduction of the -- of the size of the trial. We like the story. I mean, it ratifies what happens before. But -- but we're willing to –

*Id.* at 38 [emphasis added].

When the Court sought to reconfirm that there was an agreement, counsel for SCC restated "**we are willing to do it**, but we need to have a concrete stipulation." *Id.* at 40 [emphasis added]. The Court confirmed that "everybody's still on that same concept." *Id.* at 42.

SCC's filing does not have one reference to the transcript of that proceeding. It is clear that there was an express agreement between the parties at the December 6, 2023, Court conference

to preclude post-foreclosure marketing and sale evidence including the Ahern sale price. All that remained was drafting a stipulation memorializing that agreement. Accordingly, the Court's December 7, 2023, order requiring, *inter alia*, the parties to "file a Stipulation regarding (1) witnesses and exhibits that can be deleted from the joint trial lists based upon their agreement that post-foreclosure marketing efforts are not relevant . . ." by December 20, 2023. (ECF No. 361).

There simply can be no doubt that the ultimate sale to Ahern and that sale price were the result of post foreclosure marketing efforts and would fall within that description. It would make no sense at all for Weidner to ever consider any agreement to allow the introduction of the Ahern sale price in evidence but exclude all of the evidence unequivocally demonstrating that the Ahern sale was not remotely reflective of fair market value.

### *Additional Confirming E-mails*

After the conference and the entry of the order, counsel for SCC continued to expressly confirm that the agreement included precluding evidence regarding the Ahern sale. Pursuant to their agreement and the order, on December 12, 2023, the parties exchanged lists of evidence that would be included in the stipulation and would be precluded at trial. **Ex. A** at ¶ 8. Of course, consistent with the parties' agreement, both parties' lists included references to post-foreclosure marketing including the sale to Ahern. *Id*. at ¶ 9. Further, SCC included references in expert reports and deposition transcripts to the Ahern sale price as items that should be precluded. **Ex. D**.

In fact, SCC's email expressly confirmed that evidence regarding the Ahern sale was included in the category of documents that the parties agreed to exclude. For example, it stated, "The following is a listing of materials that appear to relate to post-foreclosure marketing (efforts, failed efforts) as well as **<u>the Ahern sale</u>**." **Ex. D** [emphasis added]. It further characterized the exhibits that would be precluded as "**<u>Documents on SCC Exhibit list in JPTO re post-foreclosure marketing (efforts, failed efforts) as well as the Ahern sale</u>**" and "**<u>Defendants' Exhibits from JPTO re post-foreclosure marketing (efforts, failed efforts) as well as *Ahern sale*</u>**" *Id*. [bold and underline in original, italics added].

Counsel for Weidner also emailed counsel for SCC a draft stipulation on December 12, 2023.[7] Pursuant to the parties' agreement, the draft stipulation provided, *inter alia*, "None of the witnesses, either in person or by deposition, shall testify regarding the Post-Foreclosure Marketing Efforts or Ahern Sale." **Ex. H**.

*The December 15th and 18th Meet and Confer Conferences*

Counsel for the parties met and conferred regarding the stipulation and the document lists on December 15, 2023. **Ex. A** at ¶ 10. SCC's counsel provided general comments regarding the draft stipulation. *Id*. at ¶ 11. None of those comments stated or implied that SCC changed its mind and now wanted to include the Ahern sale price.

On December 18, 2023, counsel for Weidner sent emails attaching (i) draft exhibits to the stipulation specifying the exhibits, deposition transcripts and portions of expert reports that would be precluded at trial as discussed during their December 15, 2023 conference and (ii) a revised draft stipulation based upon the comments made at the conference.[8] Once again, the revised draft stipulation stated: "None of the witnesses, either in person or by deposition, shall testify regarding the Post-Foreclosure Marketing Efforts or Ahern Sale." **Ex. I**.

As of December 18, 2023, the parties agreed to exclude some 98 exhibits—leaving only seven exhibits remaining in dispute. **Ex. A ¶** at 10. Only three of those exhibits included references to the Ahern sale price. *Id*. The parties held a meet and confer on December 15, 2023, during which they discussed these three exhibits. *Id*. Counsel for Weidner expressed his concern that the three documents included the sale price. *Id*. If counsel for SCC believed that preclusion of the sale price was not part of the agreement, they clearly would have said so at that meeting. They did not. In fact, they did not say that they needed the sale price itself. *Id*. Rather, they stated that they needed the documents because they included elements necessary for their calculation of post-foreclosure damages. *Id*. For example, one of the exhibits was the settlement statement for the Ahern sale. **Ex. I**. It included certain charges which, presumably, SCC will include in their

---

[7] *See* December 12, 2023 email attached hereto as **Exhibit "H."**

[8] *See* December 18, 2023 emails, including email attachments, attached hereto as **Exhibit "I."**

claim for post-foreclosure damages. *See id.*

Another exhibit was the Ahern agreement of sale. Counsel for SCC confirmed in an email that they wanted to include it as evidence solely for the purpose of specific elements of their claim for post-foreclosure damages. **Ex. A** at ¶ 18; **Ex. J**. For example, counsel for SCC referenced section 2.10(a) of that agreement which specifies costs and expenses SCC was required to pay.[9] Once again, if counsel for SCC believed that the agreement did not include evidence regarding the Ahern sale, they would have said so. Once again, they did not.

On December 19, 2023, counsel for Weidner sent an email to counsel for SCC updating the status of the stipulation.[10] As to the three exhibits referencing the Ahern sale price, the email suggested that the sale price be redacted and that the specific elements that SCC needed for its alleged post-foreclosure damages remain. **Ex. A** at ¶ 12.

On December 19, 2023, counsel for SCC sent an email listing additional expert report pages that they wanted to exclude.[11] Those pages included references to the Ahern sale price. Accordingly, coupled with the previous lists exchanged by counsel, SCC had agreed to exclude all expert report references to the Ahern sale price.

On December 20, 2023 – the day the stipulation was due by this Court's Order – SCC stated for the first time that they did not have time to work on the stipulation since they were still working on another filing due that day.[12] As a courtesy, Counsel for Weidner offered to agree to request an extension until December 22, 2023, and further offered to draft the stipulation since SCC stated they did not have time.[13]

---

[9] *See* December 15, 2023 email and agreement of sale attached hereto as **Exhibits "J"** and **"K,"** respectively. The email stated, "David, you're correct that 2.5 [to exhibit 732] is important to post-foreclosure damages. That section references the prorations in 2.8, which is one of the reasons I raised 2.8 during the call. Also, if I neglected to be clear on this during the call, I was not intending to limit the relevance re: post-foreclosure damages to only section 2.8, but was doing so as an example. As another example, 2.10(a) is also relevant."

[10] *See* December 19, 2023 email, attached hereto as **Exhibit** "**L**."

[11] *See* December 19, 2023 email, attached hereto as **Exhibit** "**M**."

[12] *See* December 20, 2023 email, attached hereto as **Exhibit "N."**

[13] *See* December 20, 2023 email, attached hereto as **Exhibit "O."**

The express terms of the Stipulation and Order demonstrate that the Ahern sale was part of the agreement. (ECF No. 370). In fact, the very title of the Stipulation and Order makes this clear - "STIPULATION AND ORDER REGARDING STIPULATION TO WITHDRAW EVIDENCE REGARDING POST-FORECLOSURE SALE MARKETING EFFORTS **AND SALE**." (ECF No. 370) [emphasis added]. The Stipulation and Order further states that "On December 7, 2023, this court entered an order requiring, inter alia, the Parties to file by December 20, 2023, a stipulation regarding the withdrawal of witnesses and exhibits regarding post-foreclosure sale marketing efforts **and sale** (ECF 361)." *Id.* [emphasis added].

Therefore, as of the first deadline for the filing of the stipulation, SCC did not state that it wanted to include the Ahern sale price or that it otherwise wanted to renege on their agreement to preclude post-foreclosure marketing and sale evidence.

***SCC's Attempts to Alter the Agreement after More than a Month of Discussions***

On December 21, 2023, counsel for SCC sent an email stating for the first time that it required that the post-foreclosure sale purchase price be included in the stipulation and exhibits.[14] In other words, SCC stated for the first time that it wants to be able to state the purchase price – which it previously stated was irrelevant – but not permit Weidner to present the mountain of evidence showing that the sale was not indicative of the fair market value of the property. The alleged reason was that it needed the sale price "to establish that there was no windfall . . . ." That was the first time SCC made that claim or referenced any potential "windfall" argument – an argument that does not make any sense.

Nevertheless, if counsel for SCC believed that the agreement did not include evidence regarding the Ahern sale, they would have said so in the December 21, 2023 email. Once again, they did not. Rather, they asserted this new potential "windfall" argument.

Another meet and confer was held on December 22, 2023 – the day the stipulation was due pursuant to the first extension. (ECF No. 370). **Ex. A** at ¶ 20. Counsel for Weidner tried to work

---

[14] *See* December 21, 2023 email, attached hereto as **Exhibit "P."**

through this new "windfall" argument raised by SCC including potentially stipulating that Weidner would not make that claim. *Id*. at ¶ 21.

However, the meet and confer hit a brick wall due to a truly remarkable statement made by counsel for SCC. Incredibly, for the first time, counsel for SCC claimed that they did not have authority from their client to enter into any part of the stipulation. **Ex. A** at ¶ 20. This was particularly astonishing since it had never been raised before and because client representatives of SCC attended both the November 17, 2023 conference where counsel for SCC raised the issue and the December 6, 2023 conference where the parties agreed to preclude such evidence.

Once again, as a courtesy, counsel for Weidner agreed to join in a request for an extension until December 29, 2023. (ECF No. 372). And once again, this stipulation - drafted by counsel for SCC - specifically referenced the Ahern sale. The title once again stated, "STIPULATION AND ORDER REGARDING STIPULATION TO WITHDRAW EVIDENCE REGARDING POST-FORECLOSURE SALE MARKETING EFFORTS **AND SALE**." *Id*. [emphasis added]. And, once again, the stipulation stated, "On December 7, 2023, this court entered an order requiring, inter alia, the Parties to file by December 20, 2023, a stipulation regarding the withdrawal of witnesses and exhibits regarding post-foreclosure sale marketing efforts **and sale**." *Id*. [emphasis added].

SCC has since reconfirmed that it requires that the Ahern sale price be included. Of course, this defeats the entire purpose of the agreement from Weidner's perspective and smacks of bad faith on SCC's part as addressed more fully below.

It is clear that SCC simply has "buyer's remorse." For example, SCC was clearly concerned that it would not be permitted to present pre-foreclosure marketing evidence. SCC now states, "Moreover, the relevancy of the Ahern sale price increased substantially from when the stipulation was first discussed as a possibility in November 2023. That occurred because Defendant Weidner raised its profile through its request for a preliminary hearing seeking to obtain pre-trial live testimony of SCC's trial experts before this Court." (ECF No. 393 at 4: 17-20).

The potential preclusion of pre-foreclosure evidence does not give SCC the ability to

"renege on . . . [its agreement regarding post-foreclosure evidence] voluntarily made in open court. To do so would be unfairly prejudicial to [the other party] and impede judicial economy." *Indie Caps LLC*, at *9 (citing *Molina*, 596 F.3d at 1169).

Weidner respectfully requests that the Court enforce the agreement reached in open court and preclude from evidence references to post-foreclosure marketing and sale.

### B. Weidner Never Agreed to Solely Exclude Evidence Of Post-Foreclosure Marketing And Not The Sale Itself

SCC's bad faith includes its alleged "proper stipulation." As shown above, precluding evidence regarding the Ahern sale was a part of the agreement from the beginning. However, SCC seeks, as it has in prior filings, to eliminate Weidner's ability to rebut SCC's oft-repeated theme that the "market had spoken" when SCC eventually dumped the Lucky Dragon Hotel & Casino in the Ahern sale at a below market price. This is because, as prior filings show, the circumstances of these other sales efforts readily demonstrate the "market" had not, in fact, spoken. Rather, there were several reasons the Property did not sell which had nothing to do with the actual fair market value of the Property. Instead, as Griffith Harsh stated in a March 1, 2019, they decided to ***"sign the Ahern doc [and] take the loss out [W]eidner [sic] and Fonfa's ass."*** [15]

In other words, SCC wants to be able to state the purchase price – which it previously stated was irrelevant – but not permit Weidner to present the mountain of evidence showing that the sale was not indicative of the fair market value of the property. Once again, SCC wants to have its cake and eat it too.

### C. SCC Acted In Bad Faith And Sanctions Are Appropriate

Counsel for Weidner does not make the statements contained in this brief lightly. However, they are warranted due to the egregiousness of SCC's conduct.

Federal Courts have the power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2132–

---

[15] *See* March 1, 2019 text message, attached hereto as **Exhibit "Q."**

33, 115 L.Ed.2d (1991). *See also* 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

Sanctions are appropriate in cases of bad faith or conduct tantamount to bad faith. *Harper v. Nevada Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1046 (D. Nev. 2021) (citing *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002). Sanctionable conduct includes "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). It is the moving party's burden to demonstrate the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose. *Harper*, 552 F. Supp. 3d at 1046 (citing *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015).

As set forth in Weidner's previously filed Status Update Regarding Court Ordered Stipulation, counsel for Weidner expended an enormous amount of time and effort working towards filing the stipulation and extended SCC various courtesies and accommodations when SCC was unable to focus on this stipulation. Unfortunately, counsel for SCC was incredibly unresponsive, acted in bad faith, and generally frustrated the process such that their conduct warrants sanctions.

As a preliminary matter, it must be noted that although counsel for Weidner suggested that the stipulation be short and simple, SCC required that the stipulation comprehensively list the documents, witness testimony and expert reports that would be precluded at trial so that it would be "concrete."[16] In addition to the work referenced above, counsel for Weidner was forced repeatedly to hound counsel for SCC to provide comments to the stipulation and to the various lists that were circulated to be attached to the stipulation. **Ex. A** at ¶ 19. In addition to the fact

---

[16] *See* ECF No. 373, December 6, 2023 transcript at 36-38.

that SCC's actions caused counsel for Weidner to spend far more time on this process then what should have been necessary, all of that effort became worthless when SCC reneged on their agreement.

For example, as stated above, on Monday December 18, 2023, counsel for Weidner sent emails attaching (i) draft exhibits to the stipulation specifying the exhibits, deposition transcripts, and portions of expert reports that would be precluded at trial as discussed during their meet and confer; and (ii) a revised draft stipulation based upon the comments made at the Friday December 15, 2023, meet and confer.[17] Unfortunately, counsel for SCC did not respond to either email. SCC never responded to that email.

On December 19, 2023, the day before the stipulation was due, counsel for Weidner emailed counsel for SCC stating:

> Below is an update to the status of the stipulation and its exhibits. I am very concerned that you have not responded to most of what I sent yesterday morning. I believe we are very close and have listed below the actions that remain. If it is easier for you, we could do a call first thing tomorrow morning. <u>It is important that you get back to me today regarding most or all of it so we can put it to bed and file tomorrow as required by the Order</u>.

**Ex. L**.

On December 20, 2023, counsel for Weidner sent two emails to counsel for SCC essentially begging them to provide the status of their review.[18] Counsel for Weidner also left voicemail messages with two of SCC's attorneys. The second email sent that day stated:

> . . . I have sent numerous emails to all of you and left messages with MaryAnn and David and have not received any response. I would appreciate it if someone representing SCC at least give me the courtesy of a response.[19]

Finally, SCC responded on December 20, 2023 – the day the stipulation was due – stating

---

[17] *See* December 18, 2023 emails, attached hereto as **Exhibit "R."**

[18] *See* December 20, 2023 emails, attached hereto as **Exhibit "S."** [emphasis in original].

[19] *See id*. [emphasis in original].

for the first time that they did not have time to work on the stipulation since they were still working on another filing due that day. **Ex. N**. As a courtesy, counsel for Weidner offered to agree to request an extension until December 22, 2023, and further offered to draft the stipulation since SCC stated they did not have time. **Ex. O**.

At the request of counsel for Weidner, counsel for the parties spoke on December 21, 2023. Ex. A at ¶ 19. Once again, counsel for SCC promised to provide comments to the stipulation exhibits which were due to be filed the next day. Once again, counsel for Weidner was forced to send follow up emails regarding the status of SCC's review. For example, counsel for Weidner sent the following email on December 22, 2023 – the day the stipulation was due under the first extension:

> Once again, I am forced to hound you to provide comments to the stipulation documents. I have done everything possible to accommodate your schedule and to do most of the necessary work. I agreed to an extension since you did not provide comments by the Court imposed deadline and I drafted that stipulation. Yet, once again, it is the morning that the stipulation is due and you have not provided comments to 2 of the Exhibits. I told you yesterday that I have a lot scheduled today and that I cannot work on this into the night. You state that you would be more responsive. But, once again, I am forced to hound you.
>
> Please send me the comments as soon as possible.[20]

Another meet and confer was held on December 22, 2023 – the day the stipulation was due pursuant to the first extension. (ECF No. 370). The most troubling part of the December 22, 2023, meeting was that counsel for SCC claimed that it did not have authority from their client yet to enter into any part of the stipulation. **Ex. A** at ¶ 20. Once again, as a courtesy, counsel for Weidner agreed to join in a request for an extension until December 29, 2023. (ECF No. 372). *Id*. at ¶ 21.

At the request of counsel for Weidner, counsel for SCC agreed not to wait until the last minute and to provide updates regarding the status of their review of the stipulation and its exhibits. *Id*.

---

[20] *See* December 22, 2023 email, attached hereto as **Exhibit "T."**

Unfortunately, SCC once again did not fulfill its promises. *Id*. at ¶ 22. On December 27, 2023, counsel for Weidner once again requested the status of SCC's review of the stipulation issues.[21] One SCC attorney responded that he could not participate due to a family illness saying that his partners, Maryann Joerres and David Reynolds, would respond, and Ms. Joerres stated she was ill and could not respond.[22]

Incredibly, when counsel for Weidner followed up with Mr. Reynolds, he tried to blame counsel for Weidner for the delay stating he was somehow waiting for comments to the stipulation. **Ex. A** at ¶ 23. However, he admitted he still was not able to deal with at least two of the three stipulation exhibits (concerning deposition excerpts and expert report provisions that would excluded from trial evidence).[23] Once again, counsel for Weidner was forced to respond to correct his incorrect statements. That lengthy email ended with the following:

> It is clear you are still not ready to substantively deal with the issues. To falsely now suggest that the ball is somehow in our court when (1) you admitted in our last call that you still did not even have client authority for the very stipulation that was your side's idea from a month ago, and (2) you still have not gotten back to us on Exhibits A, B and C (all of which we diligently completed our work on weeks ago) is particularly outrageous.[24]

Counsel for SCC responded with yet another evasive email on December 29, 2023.[25] He stated for the first time that the stipulation should **not** include the exhibits listing the deposition transcripts and expert report portions that would be precluded. It is truly remarkable that SCC would take this position after **it was SCC's requirement** from the start to have a "concrete" stipulation and after counsel for Weidner expended an enormous amount of time and energy complying with SCC's requirement. Clearly SCC simply was not ready to deal with that issue.

---

[21] *See* December 27, 2023 email, attached hereto as **Exhibit "U."**

[22] *See* December 27, 2023 email from Jim McCarthy, and December 28, 2023 email, attached hereto as **Exhibits "V"** and **"W,"** respectively.

[23] *See* December 28, 2023 email, attached hereto as **Exhibit "X."**

[24] *See* December 28, 2023 email, attached hereto as **Exhibit "Y."**

[25] *See* December 29, 2023 email, attached hereto as **Exhibit "Z."**

However, perhaps more importantly, SCC has now reneged on its agreement and reconfirmed that it requires that the Ahern sale price be included. Of course, this defeats the entire purpose of the stipulation from Weidner's perspective and smacks of bad faith on SCC's part.

Therefore, SCC's bad faith caused Weidner to incur substantial unnecessary fees. Such conduct warrants sanctions including requiring SCC to pay those fees. Should the Court require it, Counsel for Weidner will provide backup for those fees.

### III.   CONCLUSION

For the foregoing reasons, counsel for Weidner respectfully request that this Court enter an order (i) enforcing the agreement between the parties to preclude post-foreclosure marketing and sale evidence including the sale to Ahern and (ii) entering sanctions against SCC in the form of attorney's fees incurred relating to this issue.

DATED this 15th day of January 2024.

*/s/ Oliver J. Pancheri*
NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
OLIVER J. PANCHERI, ESQ.
Nevada Bar No. 7476
**HOLLEY DRIGGS**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308 / Fax: (702) 791-1912
Email: nsantoro@nevadafirm.com
        opancheri@nevadafirm.com

*Attorneys for Defendant William Weidner*

DAVID B. SNYDER, ESQ.
(Admitted *Pro Hac Vice*)
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
Tel.: (215) 299-2000 / Fax: (215) 299-2150
Email: dsnyder@foxsrothchild.com