UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SNOW COVERED CAPITAL, LLC,<br><br>    Plaintiff<br><br>v.<br><br>WILLIAM WEIDNER, et al.,<br><br>    Defendants | Case No.: 2:19-cv-00595-APG-NJK<br><br>**Order Regarding Post-Foreclosure Damages** |

Snow Covered Capital, LLC (SCC) seeks to recover damages it incurred after foreclosing on the subject property. I directed the parties to brief the issue. Because the guaranty at issue limits damages to those arising before foreclosure, SCC is not entitled to recover any post-foreclosure damages.

The parties are familiar with the facts, so I repeat them here only where necessary to resolve this issue. William Weidner, Andrew Fonfa, and David Jacoby (the Guarantors) signed a Guaranty in connection with two loans by SCC to fund construction of the Lucky Dragon hotel and casino. After the debtors defaulted on those loans, SCC foreclosed on its deed of trust encumbering the Lucky Dragon. SCC sued the debtors and the Guarantors to recover its damages. SCC settled its disputes with the debtors and Jacoby, but persisted with its claims against Fonfa and Weidner under the Guaranty.

I conducted a bench trial regarding the deficiency amount under Nevada Revised Statutes Chapter 40. As part of that proceeding, the parties stipulated that the amount of indebtedness at the time of the foreclosure sale (*i.e.*, SCC's pre-foreclosure damages) was $59,200,705.33. ECF No. 451 at 3. I found the fair market value of the subject property to be $60,000,000, so no deficiency exists.

SCC also seeks to recover from the Guarantors amounts it incurred after it foreclosed on the property. Specifically, it seeks to recover (1) its expenses for re-selling the property to DFA, LLC (i.e., commissions to the selling broker CBRE, transfer taxes, and title and escrow fees), and (2) its "holding expenses" (i.e., property taxes, sewer fees, fees paid to consultants, and fees of the receiver SCC put in place to protect the property).[1] ECF No. 404 at 4-5, 15.

SCC devotes considerable portions of its briefs addressing the definition of "indebtedness" under NRS Chapter 40, the Restatement (Third) of Property, and cases analyzing the deficiency statutes. ECF Nos. 388 at 18-20, 24-37; 404 at 8-15. But the plain language of the Guaranty at issue here controls the outcome of this question.

The Guarantors agreed to be liable for "the payment and performance of the Guaranteed Obligations," which means "Losses" incurred by SCC for taxes, liens, and other damages "arising out of or in connection with" a list of specific events. ECF No. 204-6 at 3-4 ¶¶1.1, 1.2. "Losses" includes "Secured Obligations" as defined in the deed of trust that secured SCC's loans. *Id.*, ¶1.2. The Guarantors also agreed to pay "all costs and expenses (including court costs and reasonable attorneys' fees) incurred by [SCC] in the enforcement . . . or the preservation of [SCC's] rights" under the Guaranty. *Id.* at 6 ¶1.8.

The Guaranty included the following survival provision:

> EACH AND ALL OF THE REPRESENTATIONS, COVENANTS, AGREEMENTS, AND INDEMNITIES MADE OR GIVEN BY GUARANTOR IN THIS GUARANTY SHALL SURVIVE . . . THE ACQUISITION OF THE PREMISES BY FORECLOSURE . . . , BUT ONLY TO THE EXTENT OF ACTS OR EVENTS OCCURRING, OR OBLIGATIONS . . . FIRST ARISING (AS OPPOSED TO FIRST DISCOVERED) PRIOR TO . . . THE ACQUISITION OF THE PREMISES BY FORECLOSURE . . . .

---

[1] The amounts and categories for which SCC seeks reimbursement have changed over time. *Compare* ECF No. 388 at 36-37 *with* ECF No. 404 at 4-5.

2

*Id.* at 10 ¶3.7.  Thus, the Guarantors are not liable for acts, events, or obligations arising after the foreclosure.  This plain language answers the question whether SCC can recover post-foreclosure damages: it cannot.

This interpretation of paragraph 3.7 makes practical sense as well.  If a third party had purchased the property at the foreclosure sale, it could not charge the Guarantors for property taxes or expenses to re-sell the property later.  Similarly, a third-party purchaser could not charge the Guarantors for repairs it subsequently made.  A buyer at a foreclosure takes property "as is," including the risk that repairs may be needed.  The cost of potential repairs should be reflected in either a lower purchase price at the foreclosure sale or a lower fair market value determination as part of the deficiency calculation.  Allowing an additional recovery for repairs would constitute double-dipping.  Moreover, if SCC held and operated the property for years, it should not be able to charge its property taxes, operating costs, and other "holding" expenses to the Guarantors in perpetuity.  SCC's interpretation of the Guaranty as including these amounts would lead to absurd results.  Rather, the Guarantors' liability for SCC's losses was cut off at the foreclosure sale.

Despite the language of paragraph 3.7, SCC claims its expenses are recoverable under Guaranty paragraphs 1.2 and 1.8. ECF No. 388 at 11.  But SCC's arguments are again belied by the plain language of those provisions.  SCC acknowledges that paragraph 1.2 limits its recovery to "'Losses' associated with a list of specific events." ECF No. 388 at 14.  For instance, legal costs and expenses must be "reasonably incurred by [SCC] (i) in connection with litigation or other legal proceedings involving the collection or enforcement of this Guaranty, *and* (ii) arising from or relating to the filing or a petition under any bankruptcy . . . ." ECF No. 204-6 at 3 ¶1.2(d)

(emphasis added). Thus, legal costs not incurred in connection with the Lucky Dragon bankruptcy are not recoverable under this paragraph.

SCC also seeks to recover for the amount it incurred "to pay off a pre-foreclosure CenturyLink lien against the furniture, fixtures, and equipment located at the Property when the Guarantors refused" to pay off that lien. ECF No. 388 at 14. But Guaranty paragraph 1.2(c) covers only liens "which would be superior to the lien or security interest of [SCC's] Deed of Trust or the other Loan Documents." It seems doubtful that the CenturyLink lien was superior to SCC's first-position deed of trust, so that amount would not come within the language of paragraph 1.2(c). However, I do not have enough information about CenturyLink's lien to know whether it would have been superior to SCC's security interest, so I take no position at this time whether the Guarantors are liable for that amount.

Similarly, post-foreclosure fees of the receiver are not covered by Guaranty paragraph 1.8 because the receiver did not preserve SCC's rights under the Guaranty as required under paragraph 1.8. Rather, the receiver preserved the property securing the loan.

I agree with SCC that paragraph 1.8 of the Guaranty may support an award of its fees and costs incurred in enforcing its rights under the Guaranty. That paragraph makes the Guarantors liable upon breach for "all costs and expenses (including court costs and reasonable attorneys' fees) incurred by [SCC] in the enforcement" of the Guaranty. ECF No. 206 at 6. The Guarantors acknowledge this. *See* ECF No. 389 at 14-15 n.18 ("Weidner does not seek to preclude SCC from applying to the Court for post-foreclosure fees and costs which may be recoverable by Rule" 54, but reserves the right to challenge the reasonableness of those fees.). Thus, SCC may move for an award of its fees and

costs if it can demonstrate the right to do so under the Guaranty.  I take no position at this time whether SCC is entitled to such fees and costs or the amounts.[2]

SCC also seeks to recover property taxes that arose before the foreclosure. ECF No. 388 at 14:12-13.  But those appear to have been included in the parties' stipulation regarding pre-foreclosure damages. ECF No. 451 at 3.  More information is needed on this category before I can rule conclusively whether it is recoverable as an additional pre-foreclosure damage.

To the extent SCC believes it can recover additional expenses that arose prior to the foreclosure that are not covered by the parties' prior stipulation, it must confer with the Guarantors in an effort to reach an agreement on those items.  The parties also will confer about the attorneys' fees and costs SCC seeks to recover under Federal Rule of Civil Procedure 54(d) and Guaranty ¶1.8.  Absent a stipulation about additional pre-foreclosure damages and attorneys' fees and costs, SCC may file a motion to recover those damages by August 2, 2024.

I THEREFORE ORDER that SCC is not entitled to recover any damages that arose after it foreclosed on the subject property.  The parties must confer about attorneys' fees and costs and any additional pre-foreclosure damages SCC may be entitled to recover.  By August 2, 2024, either the parties will file a stipulation as to those amounts or SCC may file a motion to recover them.

DATED this 2nd day of July, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[2] Similarly, I take no position whether the Guarantors are entitled to credit for the amount by which the property's fair market value exceeded the debt on the date of the foreclosure sale.